IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02063-CNS-MEH

CITY OF FORT COLLINS,

    Plaintiff/Counterclaim Defendant,

v.

OPEN INTERNATIONAL, LLC

    Defendant/Counterclaim Plaintiff,

and

OPEN INVESTMENTS, LLC,

    Defendant.

---

## ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**

    Plaintiff has filed a "Motion for Leave to Amend Complaint and, if Necessary, Amend its Affirmative Defenses to Defendants' Counterclaim" ("Motion"). ECF 101, 102 Plaintiff seeks to add a claim for negligent misrepresentation and, potentially, to assert an affirmative defense. *Id.* A brief history of this lawsuit is relevant.

**I.    Background**

    Plaintiff filed this case on July 2, 2021, in Larimer County, Colorado District Court. Compl., ECF 6. Defendants removed the case to federal court on July 30, 2021. ECF 1. The Complaint contains claims for fraudulent inducement, breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory judgment. *See* Compl. at 14-20. It its Answer and Counterclaim, ECF 13, Defendant Open International, LLC asserts counterclaims for

breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory judgment.

The dispute stems from an effort of the Plaintiff to provide broadband and telecommunication services for its residents and to combine billing for those new services with existing utilities that the Plaintiff offered. *Id.* at 6. Plaintiff published a request for proposal ("RFP") on February 10, 2018. *Id.* Defendant Open International, LLC submitted a proposal on March 12, 2018. *Id.* at 7. The parties entered into a Master Professional Services Agreement on August 9, 2018. *Id.* at 9. The relationship did not go as planned, and Plaintiff sent a notice of default to Defendants on May 25, 2021. *Id.* at 13. This lawsuit resulted.

As grounds for adding a claim of negligent misrepresentation, in simple terms, Plaintiff asserts that discovery in this case disclosed evidence that Defendants may have been negligent in their representations concerning the efficacy of their proposed billing system (intended to handle billing services for both the new broadband services and existing utilities provided by Plaintiff such as electric, water, wastewater, and stormwater), rather than intentionally misleading as originally pleaded. Mot. at 2. This potential divergence centers around a "functional matrix" that Defendants used to indicate to the Plaintiff what functionalities were already part of Defendants' billing software (titled "Smartflex") and what functionalities remain to be developed. As Plaintiff puts it, Defendants represented, in their response to the RFP, that 89.7% of Smartflex's functionality was already developed and part of the product, but in reality, only 59.4% was already there and the rest remaining to be developed. *Id.* at 5. Although Plaintiff asserts in its motion that Defendants knew they were misrepresenting the facts (which would undergird a fraudulent inducement claim), during depositions in September 2022, Plaintiff alleges that Defendants' representatives interpreted the functional matrix's definition of functionality (and its *current*

versus *currently planned for the future but yet to be developed* status) differently than Plaintiff. *Id.* at 6. Plaintiff contends that under Defendants' paradigm, Defendants, at the very least, should have known that their representations concerning functionality would be interpreted by the Plaintiff as "currently available" rather than planned but not yet available. *Id.* at 6-7. Plaintiff also relies on deposition testimony from a former project manager, who testified, in essence, that Defendants were out of their league in promising a functional product; did not understand utilities in the United States; and were overly optimistic in a hope to gain a foothold in the United States. *Id.* at 8.

As grounds for adding an affirmative defense, Plaintiff contends the parties' contract limits damages on Defendants' counterclaims to funds appropriated by the city council, and the funds appropriated here are nearly exhausted (about $100,000.00 left to spend, while Defendants seek over $3 million in damages). *Id.* at 8-9. Plaintiff is uncertain whether the law would treat this as an affirmative defense or simply as a limitation on the available damages and, in an abundance of caution, seeks leave to assert that defense if the Court believes it is required. *Id.* at 9.

Defendants' opposition to the added claim is multifaceted. *See* ECF 116, 117. First, they claim Plaintiff knew at the time the contract was executed that Defendants' product included proposed functionalities and Plaintiff would be the first customer, particularly since the product was not even released and still under development. Resp. at 2, 10. Second, they contend an amendment would be futile because the product's "version 8" was delivered to the Plaintiff in February 2019. *Id.* Defendants argue that Plaintiff should have known at or shortly after the delivery about the product's alleged deficiencies, and that any claim of negligent misrepresentation had to be brought within two years under Colorado law; this case being filed in July 2021. *Id.* at 2, 15-16. Third, Defendants allege any amendment at this "late" date would be unduly prejudicial, requiring Defendants to substantially revise the way it has approached discovery in this case. *Id.*

3

at 2, 17. Finally, they claim Plaintiff's negligent misrepresentation claim is barred by the economic loss rule. Resp. at 12; *Town of Alma v. AZCO Const., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000) ("[A] party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law.").

Defendants oppose the added affirmative defense (and they strongly believe it must be so pleaded), arguing that permitting it to be asserted now would be prejudicial, and that under the statute upon which Plaintiff relies on for its defense to damages, Defendants are not barred from a recovery that exceeds the Plaintiff's appropriated funds. Resp. at 20-21.

## II.     Legal Standards

The Scheduling Order in this case set the deadline for joinder of parties and amendment of pleadings as November 1, 2021. ECF 21 at 12.  Plaintiff filed its motion over a year after the expiration of that deadline. Therefore, a modification of the Scheduling Order will be necessary to grant Plaintiff's Motion.  Accordingly, Plaintiff's Motion implicates both Fed. R. Civ. P. 15 and 16.

Rule 16 dictates that "[a] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  "After a scheduling order deadline, a party seeking leave to amend must demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard."  *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1247 (10th Cir. 2015) (quoting *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014)).  "To demonstrate good cause pursuant to Rule 16, the moving party must . . . 'provide an adequate explanation for any delay.'" *Lehman Bros. Holdings Inc. v. Universal Am. Mortg. Co., LLC*, 300 F.R.D. 678, 681 (D. Colo. 2014) (quoting *Strope v. Collins*, 315 F. App'x 57, 61 (10th Cir. 2009)).

4

Rule 15 states that after the deadline for amending a pleading as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Maloney v. City of Pueblo*, 323 F.R.D. 358, 360 (D. Colo. 2018) (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)).

**III.**   **Analysis**

A.   Proposed Negligent Misrepresentation Claim

   1.   Rule 16

The Court begins by examining whether there is good cause to amend the Scheduling Order. Plaintiff argues that good cause exists because it recently received documents or information from the Defendants in discovery that demonstrate Defendants' understanding of what occurred in advance of and during the submission of their response to the RFP. Mot. at 12.

Defendants contend, in relevant part, that Plaintiff knew "version 8.0.0" of the product "was still 'in development' and 'planned for' future release, . . . . and every single grade [Defendants] assigned in its response to the functional matrix was for the yet-to-be-released version 8.0." Resp. at 9, ECF 116. But this statement begs a question of fact. Plaintiff does not dispute it knew some of the product was under development. It may have even known that the functional matrix was for a "yet-to-be-released" product. But believing Plaintiff's version, it reasonably believed that nearly 90% of the yet-to-be-released product was ready to go, while Defendants assert that "yet-to-be-released" means "mostly under development." This is a fact

question, and one that cannot be resolved by the Court on this Motion. Each side is entitled to present its position, if made in good faith, and I see nothing contrary here.

For this reason, I find good cause exists to amend the Scheduling Order unless another ground counsels against it, such as undue delay, futility, or prejudice.

2. Rule 15

Defendants argue undue delay. Resp. at 17. In the Tenth Circuit, untimeliness alone may be a sufficient basis for denying a party leave to amend. *See Hayes v. Whitman*, 264 F.3d 1017, 1026 (10th Cir. 2001); *Las Vegas Ice & Cold Storage Co. v. Far West Bank*, 892 F.2d 1182, 1185 (10th Cir. 1990). Denial of leave to amend is appropriate "when the party filing the motion has no adequate explanation for the delay." *Frank*, 3 F.3d 1357, 1365-66 (10th Cir. 1993); *see also Durham v. Xerox Corp.*, 18 F.3d 836, 840 (10th Cir. 1994) ("[t]he unexplained delay alone justifies the district court's discretionary decision.").

Here, I find Plaintiff's explanation to be adequate. The initial Complaint was limited to a claim of intentional wrongdoing. I do not fault a party for conservative pleading, which tends to cause more efficient motions practice. Waiting to amend until obtaining facts that support a claim is no vice. Otherwise, it places a plaintiff in a "darned if you do, darned if you don't" situation. No judicial doctrine of which I am aware requires all possible claims against two adversaries to be asserted in an initial complaint. Moreover, as to the limitations argument discussed above, I find this would require the Court to decide disputed issues of material fact. What Plaintiff knew or should have known in February 2019 is hotly disputed. *See Murry v. GuideOne Specialty Mut. Ins. Co.*, 194 P.3d 489, 491 (Colo. App. 2008) (stating that unless the undisputed facts clearly show when a party should have discovered the damage or conduct, the point of accrual is usually a question of fact). Finally, the several weeks between the allegedly

6

surprising testimony of witnesses under deposition and the Motion do not constitute undue delay, especially when viewed in light of the complexity of this case and the numerous document discovery issues the parties have had (even necessitating the appointment of a Master).

Defendants also claim prejudice. Resp. at 17. Undoubtedly, Plaintiff's additional claim broadens the scope of this lawsuit to some extent. This might be a different analysis if Plaintiff originally pleaded a negligence claim and now is trying to convert it to intentional conduct. Going in the present direction, however, does not so fundamentally alter the case as to establish legal prejudice. Moreover, I find no sandbagging by Plaintiff here. Discovery should already have logically encompassed investigation into the knowledge and understanding of both parties when they entered into the contract, especially in connection with Plaintiff's fraudulent inducement claim. If the Scheduling Order needs any tweaking, the parties may request it.

Finally, concerning the economic loss rule, I agree with Plaintiff that under Colorado law, if a company "wrongfully induced a party . . . into entering a contractual relationship knowing that it did not have the capability to perform any of the promised web-related services[,] . . . [it] state[s] a violation of a tort duty that is independent of the contract." *Van Rees v. Unleaded Software, Inc.*, 373 P.3d 603, 607 (Colo. 2016). Thus, when "tort claims are based on misrepresentations made prior to the formation of the contract[], which [Plaintiff] alleges induced [it] to enter into the contract[] and therefore violated an independent duty in tort to refrain from such conduct[,] . . . the claims are not barred by the economic loss rule." *Id.* That is Plaintiff's allegation here. Whether it should go to trial depends on a likely motion for summary judgment in this case.

B.  <u>Additional Affirmative Defense</u>

Colorado law has no clear precedent concerning whether the damages defense raised by Plaintiff must be brought as an affirmative defense. I agree with Defendants that Colorado views such defenses as generally needing to be pleaded, especially when they may turn on the application of a statute rather than simply the contract itself. Here, the Plaintiff relies in part on the Colorado Constitution, the City Charter, and Colo. Rev. Stat. § 29-1-110(1), which all prohibit multiple-year financial obligations that are not subject to a specific appropriation. Mot. at 17.

First, "whether a statute provides an affirmative defense or a pleading requirement is a question of substantive state law." *Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1163 (10th Cir. 2017). Second, under Colo. R. Civ. P. 8(c), "[a]ny mitigating circumstances to reduce the amount of damage shall be affirmatively pleaded." *Hildebrand v. New Vista Homes II, LLC*, 252 P.3d 1159, 1171 (Colo. App. 2010).

To the extent Defendants claim prejudice, and they need discovery on Plaintiff's assertions concerning appropriations and expenditures, I will allow it. Defendants also argue that Section 29-1-110(1) actually permits it to recover damages beyond an appropriation "so long as the contractor has complied with all provisions of the contract applicable to the dispute." Colo. Rev. Stat. § 24-91-103.6(4); *see Town of Alma v. AZCO Const., Inc.*, 10 P.3d 1256, 1266 (Colo. 2000). The parties disagree as to whether this statute applies in these circumstances. Again, that dispute is better left to a dispositive motion. Finally, Defendants do not raise a timeliness objection, and I do not *sua sponte* address it.

**IV.     Conclusion**

For these reasons, Plaintiff's Motion [filed November 4, 2022; ECF 101 & 102] is **granted.** Plaintiff shall file a clean copy (*i.e.*, no strikethroughs or underlines) of its amended pleadings on or before **February 2, 2023.**

Entered and dated this 26th day of January, 2023, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

9