IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:21-cv-02063-CNS-SP

CITY OF FORT COLLINS, a Colorado home rule municipality,

  Plaintiff,

v.

OPEN INTERNATIONAL, LLC, a Florida limited liability company and
OPEN INVESTMENTS, LLC, a Florida limited liability company,

  Defendants.

---

# ORDER

---

Before the Court are: (1) Defendants' Motion to Exclude Opinion Testimony by City's Proffered Non-Retained Expert Michelle Frey (ECF No. 122); (2) Defendants' Motion to Exclude Testimony by City's Damages Expert Ronald Seigneur (ECF No. 150); (3) Defendants' Motion to Exclude Testimony and Opinions of the City's Expert Jon Brock (ECF No. 151); (4) Plaintiff's Motion to Exclude and Limit Opinions of Peter Schulman (ECF No. 152); and (5) Plaintiff's Motion to Exclude Expert Opinion of Defendant's Expert John Hutchinson (ECF No. 153).

## I.  FACTS

This is a breach-of-contract case arising from Defendants' alleged failure to deliver Open SmartFlex (OSF), a Customer Information System (CIS) software product intended for use in administering Plaintiff's broadband utility services. The instant motions were all filed on January

1

6, 2023 (ECF Nos. 150, 151, 152, 153), save for one filed on December 19, 2022 (ECF No. 122). A ten-day jury trial is set to commence on October 23, 2023 (ECF No. 214).

Of note, while Defendants' motion pertaining to expert witness Michelle Frey was styled as a "motion to exclude" (*see* ECF No. 122), the relief Defendants seek really amounts to striking the expert for failure to comply with Federal Rule of Civil Procedure 26's disclosure requirements. As such, while the Court will analyze the motion pertaining to Ms. Frey under Rule 26, it will assess the remaining motions to exclude under Federal Rule of Evidence 702 as well as the standards set forth in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590–91 (1993).

## II.  LEGAL STANDARDS

### A.  Federal Rule of Civil Procedure 26

Under Rule 26(a)(2), a party must disclose the identity of any witness it may use at trial to present expert testimony. Pertinent here, if the expert witness is not required to provide a written report, the party's disclosure must state: "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. Proc. 26(a)(2)(C).

Under Rule 37(c)(1), if a party fails to disclose an expert witness per the requirements of Rule 26(a)(2), the party may not use that witness to supply evidence at trial unless the failure to disclose was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). The Court has broad discretion in determining whether the Rule 26 violation was substantially justified or harmless, and the court need not make explicit findings on this issue. *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (citations omitted). When exercising its discretion, the Court looks to several factors: "(1) the prejudice and surprise to the party against

2

whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Id*. "A trial court has considerable discretion to determine an appropriate sanction under Rule 37 and the particular circumstances of a given case." *Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, No. 01-CV-01644-REB-CBS, 2010 WL 502721, at *17 (D. Colo. Feb. 8, 2010) (citation omitted).

### B. Federal Rule of Evidence 702

Federal Rule of Evidence 702 governs the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see also Daubert*, 509 U.S. at 590–91. The party submitting the expert's testimony must show by a preponderance of the evidence that the testimony is admissible. *See, e.g.*, *Bethel v. Berkshire Hathaway Homestate Ins. Co.*, No. 17-CV-01456-CMA-KLM, 2022 WL 1037572, at *2 (D. Colo. Apr. 1, 2022). To determine whether expert testimony is admissible, a court must determine whether: (1) the expert is qualified; (2) the expert's proffered opinion is reliable; (3) the expert's testimony is relevant; and (4) the proffered testimony will assist the trier of fact. *See id.* at *2; *103 Invs. I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006); *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122-23 (10th Cir. 2006).

An expert is qualified if they have the "knowledge, skill, experience, training, or education" to render an opinion. *Roe v. FCA US LLC*, 42 F.4th 1175, 1180 (10th Cir. 2020) (citing Fed. R.

3

Evid. 702). An expert's testimony is reliable if the methodology employed by the expert is based on "sufficient data, sound methods, and the facts of the case." *Id.* (citation omitted). The expert's testimony must be scientifically sound, but "absolute certainty" is not required. *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) (quotation omitted). Testimony is relevant if it "logically advances a material aspect" of the case and has a "valid scientific connection" to the case's disputed facts. *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 884 n.2 (10th Cir. 2005) (citation omitted). The court looks to other non-exclusive factors to determine if the testimony will assist the jury: (1) whether the testimony is relevant; (2) whether it is within the juror's common knowledge and experience; and (3) whether it will usurp the juror's role of evaluating a witness's credibility. *Rodriguez-Felix*, 450 F.3d at 1123 (citation omitted). Doubts about the testimony's usefulness should be resolved in favor of admissibility unless such factors (e.g., time or surprise) weigh in favor of exclusion. *See Robinson v. Missouri Pac. R. Co.*, 16 F.3d 1083, 1090 (10th Cir. 1994) (quotation omitted).

## III.  ANALYSIS

### A.  Plaintiff's Non-Retained Hybrid Expert Michelle Frey (ECF No. 122)

Defendants move to strike Plaintiff's non-retained expert, Michelle Frey, because Plaintiff failed to disclose her opinions per Rule 26(a)(2)(C)(ii) (ECF No. 122 at 2–4). Specifically, Defendants argue that, while Plaintiff properly disclosed "the subject matter on which the [Dr. Frey] is expected to present," Plaintiff failed to provide "a summary of the facts and opinions to which [Dr. Frey] is expected to testify," leaving Defendants unable to prepare to cross-examine her (*id.* at 2). Plaintiff counters that Defendants are already well familiar with Dr. Frey's opinions and involvement in this case—*both* parties listed Dr. Frey as a fact witness in their initial

4

disclosures, Defendants made numerous allegations related to Dr. Frey's opinions in their counterclaims, and Defendants participated in a deposition of Dr. Frey on October 12, 2022 (ECF No. 155 at 2–7).

Although Defendants appear to have prior familiarity with Dr. Frey's opinions, Rule 26(a)(2)(C) disclosure obligations nevertheless "cannot be ignored or dismissed as a mere formality, and while less demanding [than the disclosure requirements for retained experts], these requirements must still be met." *Nosewicz v. Janosko*, No. 1:16-cv-00447-PAB-KLM, 2019 WL 4248895, at *5 (D. Colo. Aug. 19, 2019) (citation omitted). There is, however, "scant case law outlining what constitutes a sufficient disclosure under Rule 26(a)(2)(C)." *Seeley v. Home Depot U.S.A., Inc.*, No. 1:16-cv-00584-PAB-NYW, 2018 WL 4275375, at *4 (D. Colo. Sept. 7, 2018) (citation omitted). At a minimum, though, while a disclosure need not "outline each and every fact to which the non-retained expert will testify or outline the anticipated opinions in great detail," it must "provide a brief account of the principal facts supporting [the expert's] opinions" in order to "obviate the danger of unfair surprise" regarding the expert's testimony. *Id.* at *4, *5 (citations and internal quotation marks omitted).

Here, Plaintiff's disclosure outlines the broad contours of Dr. Frey's opinions in six bullet points (*see* ECF No. 122-1), but it lacks any "account of the principal facts" underlying her opinions. *Seeley*, 2018 WL 4275375, at *5. Plaintiff is amenable to supplementing its disclosure, however, and the Court agrees with Plaintiff that Defendants have not been prejudiced by the disclosure's insufficiency (ECF No. 155 at 10–14). Accordingly, Defendants' motion to exclude the testimony of Dr. Frey is DENIED. Plaintiff is ORDERED to supplement its disclosure by May 26, 2023, and may not exceed the original scope of the disclosure.

### B.  Plaintiff's Retained Damages Expert Ronald Seigneur (ECF No. 150)

Ronald Seigneur's expert report identifies and calculates eight categories of damages Plaintiff purportedly suffered due to Defendants' failure to deliver OSF: (1) the replacement cost of the broadband billing solution; (2) the replacement cost of the utilities CIS solution; (3) lost staffing efficiencies for tasks that OSF was supposed to automate; (4) annual overhead expenses that would not exist if OSF worked; (5) payments to consulting firms for assistance with the OSF project; (6) lost net revenue; (7) payments to Defendants for OSF's partial development; and (8) labor costs related to OSF's implementation (*see* ECF No. 150-4 at 6–11).

In the instant motion, Defendants first argue that Mr. Seigneur's testimony regarding categories 1–6 above should be excluded because these damages either are "consequential damages" expressly prohibited by MPSA § 12.1 or, in the aggregate, they exceed "the fees paid or payable by customer . . . during the twelve (12) months prior to the event giving rise to liability" in violation of the Master Professional Services Agreement (MPSA) § 12.1 (ECF No. 150 at 3–6). Plaintiff counters that Defendants' argument presents disputed questions about available damages—namely, whether these losses qualify as "consequential damages," and what the precise "event giving rise to liability" was (ECF No. 174 at 5–6, 8). The Court agrees with Plaintiff that the proper vehicle to resolve these questions is a motion for summary judgment, not a motion to exclude expert testimony under Rule 702. *See Wells Fargo Bank, N.A. v. Stewart Title Guar. Co.*, No. 2:19-cv-00285-DB-JCB, 2020 WL 6451963, at *3 (D. Utah Nov. 3, 2020) ("[T]he court will not entertain summary judgment-esque arguments disguised as *Daubert* objections."); *see also Colton Crane Co. v. Terex Cranes Wilmington, Inc.*, No. CV 08-8525 PSG (PJWx), 2010 WL 2035800, at *1 (C.D. Cal. May 19, 2010) (explaining that motions in limine are not "an appropriate

means to resolve factual disputes or weigh evidence," and "should not be used as disguised motions for summary judgment").

Similarly, Defendants argue that Mr. Seigneur's testimony regarding damages categories 5–8 should be excluded because these damages are available only in the event of recission, and Plaintiff waived its right to rescind the contract by "fail[ing] to promptly seek recission upon learning of [Defendants'] alleged misrepresentations and, further, continuing to work with [Defendants] to perform and extend the MPSA" (ECF No. 150 at 6–7).[1] In response, Plaintiff asserts that Defendants' argument presents a disputed question—i.e., whether recission is an available remedy in this matter—that is more appropriately resolved in a summary judgment motion, not a *Daubert* motion (ECF No. 174 at 8–9). Indeed, as Plaintiff correctly points out, Defendants raised an identical argument in its motion for summary judgment filed on December 19, 2022 (*id.* at 8; *see* ECF No. 132 at 23–26). The Court agrees and, for the reasons explained above, will not entertain this improper second attempt at a motion for summary judgment.

Finally, Defendants contend that Mr. Seigneur's expert report is deficient in that it (1) fails to identify his methodology for calculating the damages he identified in this case, (2) misapplies certain concepts of contract damages and lost profits in a way that renders his damages calculations unreliable, and (3) relies on insufficient facts and data (ECF No. 150 at 8–15). None of these contentions are persuasive. First, the Court notes that Mr. Seigneur's report explains his

---

[1] Relatedly, Defendants argue that even if recission is available in this matter, Mr. Seigneur's testimony regarding damages categories 5–8 should be excluded because his calculations misapplied certain principles of recission (ECF No. 150 at 7–8). To the extent Defendants allege that Mr. Seigneur's ultimate recission calculations are flawed, this Court notes that, in the context of a *Daubert* challenge, Plaintiff need not prove that Mr. Seigneur is indisputably correct. *See Two Moms and a Toy, LLC v. Int'l Playthings, LLC*, No. 1:10-cv-02271-PAB-BNB, 2012 WL 5249459, at *5 (D. Colo. Oct. 24, 2012) ("Typically, to determine the reliability of expert testimony, courts do not focus on the correctness of the opinion."). On this point, the Court finds that Defendants' criticisms go to the weight, not admissibility, of Mr. Seigneur's recission damages calculations.

7

methodology for calculating damages in sufficient detail—for each of the eight categories of damages identified, Mr. Seigneur provides an overview of the steps and key assumptions underlying his calculations (*see* ECF No. 150-4 at 6–11; *see id.* at Schedules A–M). He further provides thorough explanations of the rationale underlying his lost net revenue calculation, why he employed an ex-post approach to account for the time value of money in his calculations, and the discount rates and growth rates he employed in his calculations (*see id.* at 11–14). The Court finds it sufficiently clear from the overall content and organization of Mr. Seigneur's report that his methodology amounts to identifying applicable damages categories based on his experience,[2] explaining the computational assumptions he makes based on facts made known to him in this case, then opining on the amounts of damages incurred in each category. This method is, as a general matter, sufficiently reliable for Mr. Seigneur to offer admissible testimony under Rule 702.

As to Defendants' remaining contentions about the accuracy of Mr. Seigneur's calculations and the sufficiency of the data upon which he relies, these criticisms go to the opinion's weight, not its admissibility. *Hardy v. Union Pac. R.R. Co.*, No. 1:10-cv-01880-REB-MJW, 2011 WL 5295199, at *3 (D. Colo. Nov. 2, 2011) ("To the extent [the expert's] facts and data . . . may be inaccurate, incomplete, or otherwise imperfect, those flaws go to the weight to be ascribed to his opinions, and not to their admissibility."); *Cook v. Rockwell Int'l Corp.*, 580 F. Supp.2d 1071,

---

[2] In general, Defendants' characterization of *Daubert*'s "reliability" requirement is accurate—the methodology by which the expert reached his opinion must be sufficiently identified, and that methodology must be generally deemed reliable in the field in which the expert works (*see* ECF No. 150 at 9 (quoting *United States v. Crabbe*, 556 F.Supp.2d 1217, 1222 (D. Colo. 2008))). But as Plaintiff correctly observes, where non-scientific expert testimony is concerned, the *Daubert* factors may not always be helpful in assessing reliability given "the nature of the issue, the expert's particular expertise, and the subject of his testimony"—rather, in many cases, "the relevant reliability concerns may focus upon personal knowledge or experience" (*see* ECF No. 174 at 10–11 (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999))). Here, the "reliability" of Mr. Seigneur's opinions appears to derive not from any strictly scientific procedure, but instead from "over 30 years of experience providing business valuations and calculating damages" (ECF No. 174 at 4). The Court thus finds Mr. Seigneur's calculation of economic damages sufficiently reliable in light of the particular nature of his expertise.

1085 (D. Colo. 2006) (it is for the jury "to decide whether the expert used the best or most reliable methodology" and "what weight to accord to his testimony").

For these reasons, Defendants' motion to exclude the testimony of Mr. Seigneur is DENIED.

### C. Plaintiff's Retained Technical Expert Jon Brock (ECF No. 151)

Plaintiff retained expert witness Jon Brock to opine on "relevant industry standards and how [Defendants] failed to meet those standards" while implementing OSF (*see* ECF No. 175 at 1). Here, Defendants move to exclude Mr. Brock's expert opinions for numerous reasons.

First, Defendants argue that Mr. Brock's report set forth the wrong industry standard for responding to a request for proposals (RFP)—while he claims that a vendor must respond to an RFP based on its "actual and then-current capabilities and functionalities," Defendants' own expert on the subject, John Hutchinson, claims that "the standard is to respond according to the express instructions in the RFP and based on the product the vendor is proposing to deliver" (ECF No. 151 at 1–5). To the extent that Mr. Brock's purported industry standard conflicts with Mr. Hutchinson's, Defendants have identified a quintessential "battle of the experts" for which cross-examination before a jury, not a *Daubert* motion, is the proper testing ground. *See Thompson v. State Farm Mut. Auto. Ins. Co.*, 457 F. Supp.3d 998, 1005 (D. Colo. 2020).

Second, Defendants argue that Mr. Brock's opinion about whether Defendants met the industry standard for responding to RFPs is an improper attempt at contract interpretation, since Defendants' RFP Response was ultimately incorporated into the MPSA (ECF No. 151 at 3, 4–5; *see id.* at 3, n.2). But even if the RFP Response later became part of the contract, Plaintiff correctly points out that Mr. Brock's opinions about Defendants' failure to meet industry standards refer to

9

the *pre-contract* time in which the contents of the RFP Response induced Plaintiff to award Defendants the contract for services (ECF No. 175 at 3). Put more simply, Mr. Brock's opinions on this point do not interpret a contract but are instead directed toward Plaintiff's fraudulent inducement and negligent misrepresentation claims.

Third, Defendants argue that Mr. Brock's account of the relevant industry standard and whether Defendants failed to meet it are irrelevant to the claims at issue in this case (ECF No. 151 at 4). This is inaccurate. Among other claims, Plaintiff has alleged negligent misrepresentation (ECF No. 192 at 21–23), which requires proof that:

> (1) one in the course of his or her business, profession, or employment; (2) makes a misrepresentation of a material fact, *without reasonable care*; (3) for the guidance of others in their business transactions; (4) with knowledge that his or her representations will be relied upon by the injured party; and (5) the injured party justifiably relied on the misrepresentation to his or her detriment.

*Nelson v. Csajaghy*, No. 1:14-cv-02617-CMA-KLM, 2015 WL 4035876, at *13 (D. Colo. May 28, 2015) (emphasis added). And at least as to this claim, "while industry standards are not dispositive on the issue of reasonable care, they are relevant." *Great Northern Ins. Co. v. NGL Warehouse, LLC*, No. 1:14-cv-03233-PAB-NYW, 2017 WL 275321, at *4 (D. Colo. Jan. 18, 2017).

Fourth, Defendants argue that Mr. Brock's opinions regarding Defendants' failure to meet industry standards are unreliable. Specifically, Defendants claim that: (1) Mr. Brock's testimony as to Defendants' defective functional matrix grading relies on the wrong numbers; and (2) Mr. Brock's testimony that Defendants misrepresented their then-current functionalities ignores that Defendants intentionally graded the functional matrix based on a future, in-development version

10

of OSF (ECF No. 151 at 5–6). But to the extent that Defendants perceive any shortcomings in Mr. Brock's assessments of Defendants' functional matrix grading, the Court notes that these are matters for cross-examination, not bases for wholesale exclusion of Mr. Brock's testimony. *See Daubert*, 509 U.S. at 595 ("Vigorous cross-examination, presentation of contrary evidence and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

Fifth, Defendants argue that Mr. Brock's opinions relied on "ISG's Project Estimation as a Service (PEaaS) tool" without an explanation of the PEaaS tool's methodology (ECF No. 151 at 6–8). But here, the Court agrees with Plaintiff that the methodology underlying Mr. Brock's PEaaS analysis was adequately explained. Specifically, his report noted that PEaaS is a tool "used to size capital projects for budgeting, regulatory, and audit purposes," that it compares a client's project "against projects of similar size and complexity" to evaluate the project's expected cost in terms of dollar amounts, project duration, and labor hours, and that, here, OSF was compared to projects of similar scope and complexity "drawn from a database of 13,000+ completed projects" (ECF No. 175 at 6; ECF No. 151-1 at 38–39). Given this explanation, Mr. Brock's reliance on PEaaS in forming his opinions is a proper subject for cross-examination, not broad exclusion. *See Kumho Tire Co.*, 526 U.S. at 150 (permitting leeway to assess the reliability of non-scientific expert testimony "depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony").

Sixth, Defendants argue that several of Mr. Brock's opinions constitute impermissible legal conclusions (ECF No. 151 at 8–9). With respect to his assertions about Defendant's "misrepresentations" in this case, the Court agrees. Here, Plaintiff claims that Mr. Brock's repeated

11

assertions that Defendants "misrepresented" the functions and capabilities of OSF, as well as the OSF project's schedule and cost, were not improper attempts to apply the facts to the law; rather, they were efforts to apply the facts against the industry standard of "respond[ing] accurately and factually to the RFP" (ECF No. 175 at 8). But even assuming this as true, an expert's testimony nevertheless veers into the territory of improper legal conclusion when the witness over-relies on terms that "have a separate, distinct, and specialized meaning in the law different from that present in the vernacular." *United States v. Richter*, 796 F.3d 1173, 1196 (10th Cir. 2015) (citation omitted); *see United States v. Schneider*, 704 F.3d 1287, 1294 (10th Cir. 2013) (noting that expert testimony raises concerns when the expert "uses a specialized legal term and usurps the jury's function"). And the concern is heightened here, because the notion of "misrepresentation" touches upon essential elements of Plaintiff's burden of proof for its fraudulent inducement and negligent misrepresentation claims. As such, while Mr. Brock may testify factually about Defendants' conduct during the RFP process and whether it comported with industry standards, any references to Defendants' "misrepresentations" will be excluded.

Seventh, Defendants argue that Mr. Brock's opinions about a purported industry standard of "vendor transparency, honesty, experience, and accountability" are (1) unreliable, essentially because it "reads as something [Mr. Brock] created out of whole cloth"; and (2) unhelpful to the jury, because whether Defendants violated this industry standard has little bearing on whether Defendants breached the contract at issue in this case (ECF No. 151 at 10–11). The Court is unpersuaded. A review of the relevant portion of the report appears to show that Mr. Brock refers to the industry standard of "vendor transparency, honesty, experience, and accountability" as a shorthand for "a standard and expectation that the vendor, as the expert, will staff the project with

individuals that have expertise in the field and industry being deployed," as well as a "standard in the industry to have a risk register and associated risk mitigation that is released with the weekly status" (ECF No. 151-1 at 44, 48). In this light, Mr. Brock's description of the industry standard (i.e., regarding a vendor's project staffing and disclosure of risks and delays, not simply the vendor's duty to act honestly) was proper. Furthermore, as explained above, Mr. Brock's discussion of the industry standard is relevant to Plaintiff's negligent misrepresentation claim. *See Great Northern Ins. Co.*, 2017 WL 275321, at *4.

Eighth, Defendants argue that Mr. Brock's opinions about OSF not being "highly configurable" or "ready for the U.S. market" are unreliable, because (1) Mr. Brock "has never examined, used, or evaluated OSF," nor has he "offer[ed] any reliable alternative basis that could make up for his lack of examination, and (2) Mr. Brock has not explained how OSF's lack of certain functionalities "means the *entire* OSF product was not 'ready' for the *entire* U.S. market" (*see* ECF No. 151 at 11–13) (emphases in original). These arguments, too, are unpersuasive. Even if Mr. Brock did not examine the software itself, he did apply industry standards against other evidence he reviewed, including "Open's own assessments of its product" (*see* ECF No. 175 at 12–14). And because Mr. Brock "has been involved with more than 300 utilities related to their CIS, billing systems, customer service portals, CRM, call centers, and other systems," and "has studies and evaluated over 20 different CIS/billing vendors" since 1993 (*see* ECF No. 151-1 at 4), his familiarity with this industry may properly form the basis of his opinions about OSF's configurability and market readiness. *See Kumho Tire Co.*, 526 U.S. at 150 (the reliability inquiry may be satisfied based upon a non-scientific expert's personal knowledge or experience).

Ninth and finally, Defendants argue that Mr. Brock's various other opinions about Defendants' state of mind, the credibility of Defendants' experts, and Defendants' promise to deliver OSF by a certain date are all improper (ECF No. 151 at 13–15). As to Mr. Brock's comments on Defendants' intent or state of mind (e.g., "Open knowingly misrepresented the functionalities and capabilities of its then-existing product"; "Open under-estimated the project knowingly in order to win the business"), the Court agrees.[3] "Courts generally exclude expert testimony that directly attempts to state a corporate defendant's state of mind," because "expert opinions on the intent, motives, or states of mind of corporations have no basis in any relevant body of knowledge or expertise." *Fischer v. BMW of N. Am., LLC*, No. 1:18-cv-00120-PAB-MEH, 2020 WL 9259705, at *6 (D. Colo. Mar. 10, 2020). Thus, any of Mr. Brock's references to Defendants' intent or state of mind will be excluded.

For these reasons, Defendants' motion to exclude Mr. Brock's opinion is DENIED IN PART and GRANTED IN PART.

### D.  Defendants' Retained Damages Expert Peter Schulman (ECF No. 152)

In his rebuttal expert report regarding damages, Peter Schulman opines that in the event of the contract's recission, Plaintiff would be entitled to zero damages based on an offset of Defendants' costs (ECF No. 152-2 at 29–30). He also assumed for purposes of his calculations that Plaintiff's damages under MPSA § 12.1 are limited to the 12-month period between July 3, 2020, and July 2, 2021 (*id.* at 19–20).

---

[3] Defendants' other contentions—about Mr. Brock having allegedly commented on Mr. Hutchinson's qualifications, and about Defendants' promises to deliver OSF by a certain date—are unavailing.

In the instant motion, Plaintiff argues that Mr. Schulman's opinions regarding recission damages (at pages 29–30 of his report) should be excluded because: (1) Mr. Schulman failed to assume Defendants' liability when calculating "offset" recission damages, and (2) his opinion that Mr. Seigneur's report "misses the mutuality of the recission remedy" is an improper legal conclusion (ECF No. 152 at 6–9). Neither of these arguments hold water. As explained above, criticisms of an expert's opinion based on its faulty assumptions or omissions go to the weight a jury chooses to assign to the opinion, not its admissibility. *Hardy*, 2011 WL 5295199, at *3; *Cook*, 580 F. Supp.2d at 1085. Further, Mr. Schulman's criticism above does not amount to a legal conclusion—rather, it seeks to cast doubt upon the assumptions underpinning Mr. Seigneur's recission damages calculation. This is garden-variety rebuttal testimony. *See Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 749, 759 (8th Cir. 2006) ("The function of rebuttal testimony is to explain, repel, counteract, or disprove evidence of the adverse party.").

Separately, Plaintiff argues that Mr. Schulman's opinions regarding contract damages (at pages 19–20 of his report) should be excluded because he calculated these damages on the assumption that the relevant look-back date (i.e., the "event giving rise to liability" under MPSA § 12.1) was July 2, 2021 (ECF No. 152 at 9–10). Plaintiff points out that the true look-back date remains under dispute, so Mr. Schulman's calculations for the period between July 3, 2020, and July 2, 2021, improperly assume how a disputed contractual term will apply (*id.*). The Court is unpersuaded. The language of Mr. Schulman's report does not opine on the applicability of MPSA § 12.1, nor does it opine that July 2, 2021, is the true look-back date—rather, it reflects only that his firm was "instructed to use July 2, 2021, the date that the City filed its complaint, as the look back date for applying payments during the 12 months referred to in" the MPSA (ECF No. 152-2

15

at 20). If the assumed look-back date of July 2, 2021, is ultimately rejected at trial, the failure of this assumption may vitiate Mr. Schulman's opinion on contract damages. For now, however, Mr. Schulman's reliance on the assumed look-back date does preclude his opinion on contract damages from having an adequate foundation under Rule 702. *See United States v. Crabbe*, 556 F.Supp.2d 1217, 1224–25 (D. Colo. 2008).

For these reasons, Plaintiff's motion to exclude Mr. Schulman's opinion at pages 19–20 and 29–30 is DENIED.

### E. Defendants' Retained Technical Expert John Hutchinson (ECF No. 153)

Defendants retained expert witness John Hutchinson to opine on the primary cause(s) of the OSF project's failure (*see* ECF No. 153-1 at 4). Plaintiff moves to exclude Mr. Hutchinson's expert opinions for numerous reasons.

First, Plaintiff argues that Mr. Hutchinson's opinions about the cause(s) of the OSF project's failure are unreliable, both because he failed to identify his methodology for conducting a causation analysis, and because he failed to perform any audit of the project or account for all issues affecting the project (ECF No. 153 at 4–6). But like Mr. Brock's methodology discussed above, Mr. Hutchinson relied on his "experience and knowledge from implementing CISs for over twenty years" to assess the reasons for the project's failure (ECF No. 153-1 at 5). This is an acceptable methodology. *See Kumho Tire Co.*, 526 U.S. at 150 (the reliability inquiry may be satisfied based upon a non-scientific expert's personal knowledge or experience). And to the extent that Mr. Hutchinson may not have considered certain facts during his analysis, such an omission is better suited to cross-examination than broad exclusion. *See Daubert*, 509 U.S. at 595

Second, Plaintiff argues that Mr. Hutchinson's opinions about the deployment of broadband services are unreliable, both because he failed to identify his methodology for analyzing issues with broadband services, and because broadband services fall outside the purview of his expertise (ECF No. 153 at 6–8). On this point, the Court agrees with Defendants that Mr. Hutchinson's opinions "depend not on application-specific expertise in broadband, but on expertise in billing and customer-care system implementation projects" (*see* ECF No. 173 at 5–7). As noted above, Mr. Hutchinson appears to possess ample knowledge and experience with CIS implementation.

Third, Plaintiff argues that Mr. Hutchinson's opinions about Plaintiff's staffing of the OSF project are unreliable because he failed to identify any methodology or industry standard for assessing the adequacy of project staffing (ECF No. 153 at 8–9). For the same reasons discussed above with respect to Mr. Hutchinson's causation opinion, this argument fails. *See Kumho Tire Co.*, 526 U.S. at 150.

Fourth, Plaintiff argues that Mr. Hutchinson's opinions about whether either of the parties breached the contract are improper (ECF No. 153 at 9–11). The Court agrees that Mr. Hutchinson may not offer an opinion on whether Plaintiff "breached" or "violated" the MPSA, nor may he interpret the meaning of any contract provision, define the law that the jury must apply, or tell the jury how to rule on questions of law. However, based on the statements challenged by Plaintiff, it appears that Mr. Hutchinson is not attempting to interpret the MPSA—rather, he discusses the parties' respective responsibilities as defined in the Statement of Work as a benchmark to analyze the parties' execution of project-related tasks and the reasons why the OSF project failed. This is acceptable expert reliance on language contained in the parties' contract. *Cf. Bethel v. Berkshire*

*Hathaway Homestate Ins. Co.*, 596 F.Supp.3d 1260, 1267 (D. Colo. 2022) (an expert witness "may offer factual statements about language that is included in [a contract] for the purpose of offering his opinions").

Fifth, Plaintiff argues that Mr. Hutchinson's opinions about Defendants' state of mind and credibility are improper (ECF No. 153 at 9–13). Plaintiff points out, for instance, that in his rebuttal report, Mr. Hutchinson speculates that Defendant "always *intended* to modify the portal code purchased from Milestone," and that "the parties *planned* for this [testing to occur] all along" (ECF No. 153-2 at 15, 17) (emphases added). For the same reasons discussed above with respect to Mr. Brock, any of Mr. Hutchinson's references to Defendants' motives, plans, or intentions during the OSF project will be excluded. *See Fischer*, 2020 WL 9259705, at *6.

Sixth and finally, Plaintiff argues that Mr. Hutchinson's various other opinions should be excluded as either conclusory or based on unspecialized knowledge (ECF No. 153 at 13–15). The Court finds these remaining catch-all contentions unavailing and will not address them here.

For these reasons, Plaintiff's motion to exclude Mr. Hutchinson's opinion is DENIED IN PART and GRANTED IN PART.

## IV. CONCLUSION

Defendants' Motion to Exclude Opinion Testimony by City's Proffered Non-Retained Expert Michelle Frey is DENIED (ECF No. 122). Pursuant to Fed. R. Civ. Proc. 26(a)(2)(C), Plaintiff is ordered to supplement its disclosures by May 26, 2023.

Defendants' Motion to Exclude Testimony by City's Damages Expert Ronald Seigneur is DENIED (ECF No. 150).

Defendants' Motion to Exclude Testimony and Opinions of the City's Expert Jon Brock is DENIED IN PART and GRANTED IN PART, for the reasons set forth above (ECF No. 151).

Plaintiff's Motion to Exclude and Limit Opinions of Peter Schulman is DENIED (ECF No. 152).

Plaintiff's Motion to Exclude Expert Opinion of Defendant's Expert John Hutchinson is DENIED IN PART and GRANTED IN PART, for the reasons set forth above (ECF No. 153).

DATED this 3rd day of May 2023.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge