**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 21-cv-02063-CNS-SBP

CITY OF FORT COLLINS,

    Plaintiff/Counterclaim Defendant,

v.

OPEN INTERNATIONAL, LLC,

    Defendant/Counterclaim Plaintiff,

and

OPEN INVESTMENTS, LLC,

    Defendant.

---

**DEFENDANTS' RULE 50(b) RENEWED
MOTION FOR JUDGMENT AS A MATTER OF LAW**

Defendant and Counterclaimant Open International, LLC ("Open International") and Defendant Open Investments, LLC ("Open Investments" and with Open International, "Defendants") hereby renew their motion for judgment as a matter of law under Fed. R. Civ. P. 50(b).[1]  Judgment should be entered against the City of Fort Collins ("City") on its fraudulent inducement claim.  The evidence at trial did not support a finding of fraudulent inducement, which is likewise barred by the economic loss rule, a contractual integration clause, and unrebutted timeliness and waiver defenses.  Additionally, judgment should be entered against the City and in favor of Defendants on the parties' dueling contract claims because the evidence unequivocally showed that the City unlawfully terminated the parties' contract and thereby prevented completion of the project.  Accordingly, Defendants are entitled to judgment in their favor on all remaining claims.[2]

## BACKGROUND

The evidence at trial showed that, in February 2018, the City published a request for proposal ("RFP") for a software system to support its traditional utilities—water, wastewater, stormwater, and electricity—and a new broadband service that the City planned to launch.  In

---

[1] Because Defendants' Motion reaches jury issues that that were not resolved by a verdict, Defendants renew their Rule 50(a) motion now, before judgment but within 28 days after the jury was discharged.

[2] The Court granted judgment as a matter of law against the City on its declaratory judgment claim, TR (Rough Oct. 30, 2023) at 147:4-9, and on its breach of the implied covenant of good faith and fair dealing claim, TR (Rough Nov. 2, 2023) at 59:19-60:5, so Defendants do not reassert their arguments on these claims here.  Additionally, because the jury found in favor of Defendants on the City's negligent misrepresentation claim, Defendants do not reassert their arguments as to that claim here.  Jury Verdict, Dkt. 296 (Nov. 3, 2023).  Because final trial transcripts are not yet available, Defendants cite the unofficial rough transcripts and will be happy to supplement with citations to the final transcripts as directed by the Court.

March 2018, Open International responded, proposing a roughly year-long project—which Open International warned was an aggressive timeline—to implement its forthcoming 8th-generation software, called Open Smartflex ("OSF").  Open International explained that OSF version 8.0 was still in development and planned for release later in 2018.  The City's lead negotiator and its project sponsor both acknowledged OSF's unreleased, untried, unproven status in May and June 2018.  Even so, the City chose Open International, and in August 2018, the parties executed the Master Professional Services Agreement (the "MPSA") and the Software License Agreement (with the MPSA, the "Agreements"), which governed the software implementation project.  The MPSA integrated Open International's response to the City's RFP, which included Open International's grading of the functionalities in OSF version 8.0 and a proposed schedule for the implementation of OSF.  As part of the MPSA, Open Investments guaranteed Open International's performance of the Agreements.

The City presented evidence at trial that project delays arose because OSF version 8.0 did not have the functionalities promised in Open International's response to the RFP, and, regardless, the project timeline in the RFP response was unrealistically aggressive.  The unrebutted evidence showed, however, that with full awareness of these issues the City executed the First Amendment to the MPSA, which assigned the majority of delay costs to the City and extended the project.  Later, the parties also executed a project change request, titled "PCR 29," which created new project deadlines and extended the Parties' relationship further.

About six months after PCR 29, on May 19, 2021, Open International sent the City a notice of default under the Agreements and PCR 29 and identified what the City needed to do for the project to succeed.  A week later, rather than addressing the notice of default or attempting to

cure its defaults, the City unlawfully terminated the Agreements without giving the required 30 days' notice or an opportunity to cure.  Even though the City sent this letter purporting to terminate the Agreements and threatening to rescind them based on the assertion that Open International had fraudulently induced the Agreements back in 2021, the City continued to work on the project with Open International for over a month, used OSF for several months after that, and asked Open International to propose a project reset plan under which Open International would assume more responsibilities.  The City then sued Defendants for fraudulently inducing the City into signing the Agreements more than three years earlier and for breaching the Agreements.

After a nine-day jury trial, the jury returned a verdict in favor of the City on its claim for fraudulent inducement, despite finding that the City had waived its parallel claim for negligent misrepresentation.  Based on the verdict, the City elected to rescind the Agreements, thus severing the sole link of obligation between Open Investments and the City.

## **LEGAL STANDARD**

A party is entitled to judgment as a matter of law under Rule 50(b) where the "evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion."  *Riske v. King Soopers*, 366 F.3d 1085, 1091 (10th Cir. 2004) (quotation and citation omitted).  The Court is "not required to evaluate every *conceivable* inference which can be drawn from evidentiary matter, but only reasonable ones."  *Lucas v. Dover Corp.*, 857 F.2d 1397, 1401 (10th Cir. 1988) (quotation omitted).  "The court should disregard any jury determination for which there is no legally sufficient evidentiary basis enabling a reasonable jury to make it."  *Powell v. Fournet*, 846 F. Supp. 1443, 1445 (D. Colo. 1994).

## ARGUMENT

I.   **JUDGMENT SHOULD BE ENTERED AGAINST THE CITY ON ITS FRAUDULENT INDUCEMENT CLAIM.**

The evidence at trial did not show that Defendants misrepresented then-existing or past material facts, that the City justifiably relied on any supposed misrepresentations, or that Defendants intended the City to rely on a known misrepresentation.  *See* CJI-Civ. 19:1 (2023). Moreover, the economic loss rule, the Agreements' integration clause, and the defenses of timeliness and waiver bar a fraudulent inducement claim.[3]

### A.   The City Presented No Evidence of a Misrepresentation of a Then-Existing or Past Fact by Open International, Let Alone by Open Investments.

The Court should enter judgment as a matter of law on the City's fraudulent inducement claim because there was no evidence of a misrepresentation of material fact.  It is a black-letter "element of fraud . . . that the misrepresentation relied on must be of an ***existing*** or ***past material fact***," *United Fire & Cas. Co. v. Nissan Motor Corp.*, 433 P.2d 769, 771 (Colo. 1967), so a misrepresentation cannot be "a matter of intention, or . . . an unfulfilled promise to perform an act," nor may it address "something to be done in the future," *People v. Orris*, 121 P. 163, 164 (Colo. 1912) (quotation and citation omitted), or an opinion or belief, *see Steak N Shake Enters. v. Globex Co., LLC*, 110 F. Supp. 3d 1057, 1083 (D. Colo. 2015).

---

[3] Regarding legal fraud damages, the Court held that, if the City chose to affirm the Agreements, any damages for its fraudulent inducement or negligent misrepresentation claims are capped by the limitations clause in the MPSA.  TR (Rough Nov. 2, 2023) at 13:16-14:15.  Accordingly and because the City elected rescission, Defendants do not renew their Rule 50(a) argument on the application of the damages limitation to the City's tort claims, although they maintain that no legal damages whatsoever arising from misrepresentations—as distinct from legal damages for breach of contract or the measure of a monetary award for rescission based on misrepresentations—were ever pleaded, disclosed, or shown by evidence at trial.

4

Throughout this case and during trial, the City asserted that Open International's RFP response misrepresented OSF and Open International's ability to timely complete the project. But the City failed to present any evidence of a representation that Open International or Open Investments made of an existing or past fact. Rather, the City challenged only Open International's promises to perform in the future—promises that no jury could find are misrepresentations of then-existing or past facts.

Nothing in the RFP requested a vendor to grade its then-existing software; rather, for items graded as A and B, the functional matrix instructions required those functionalities to be delivered by go-live. Ex. 23 at 18. This is consistent with the City's own witnesses' understanding of the RFP and Open International's response. Colman Keane, director of the City's broadband utility, testified that functionalities graded "A" in the RFP response were functionalities that the City expected would be ready in OSF "when it was delivered"—not at the outset of the project. TR (Rough Oct. 24, 2023) at 146:14-147:1; *accord id.* at 110:6-13 (testifying that something graded A "would be available out of the box when [Open International] delivered the product").

Moreover, Open International could not grade then-released software because it did not have any released software for the U.S. market. Open International explained that to the City throughout its response to the RFP. Ex. 5 at 55, 312, 998. In particular, the RFP response explained that "the next version *currently in development* is release 8.0.0 and is planned for Q2 2018"—months after the RFP response. *Id.* at 312 (emphasis added). Then, for each and every functionality in the functional matrix, Open International disclosed that the "Version" of OSF being graded was "8.0." *Id.* at 507-784. Open graded a *future* release to be delivered later.

5

As to Open International's statements about the project timeline, these were expressly a matter of belief, also about future performance. Ex. 5 at 20 ("Open *believes* that the Fort Collins timeframe . . . is aggressive, but realistic and achievable based on our prior CIS/OSS deployments." (emphasis added)). They were not representations of existing fact, and thus could not support fraud.

As to Open Investments, even more starkly, the evidence falls short of an actionable misrepresentation. Open International delivered the RFP response, not Open Investments. Ex. 5 at 8-9. The sole evidence of Open Investments' involvement in this case was its execution of the guarantee of the Agreements. Ex. 1 at 4; TR (Rough Oct. 24, 2023) at 14:10-15:2 (City's lead negotiator explaining Open Investments' role as contractual guarantor); TR (Rough Nov. 1, 2023) at 65:4-7, 142:15-143:5 (Mr. Corredor testifying to Open Investments' role as guarantor of Open International contract obligations); *see also* Ex. 66 (accusing only Open International of breach and fraud); Compl. (Dkt. 1) ¶¶ 5-6 (asserting entitlement only to "enforcement" against Open Investments); Am. Compl. (Dkt. 192) ¶¶ 5-6 (same). There is no evidence to support a finding that Open Investments made any precontractual representations at all, let alone material misrepresentations of fact. Thus, when the City elected to rescind the Agreements, which included Open Investments' guarantee, the City disclaimed the lone basis on which Open Investments might have been liable. As the Court held, the City "can't piece apart the contract" through partial rescission. TR (Rough Nov. 2, 2023) at 14:1-5. Thus, rescission eliminated the only means by which the City could have forced Open Investments to backstop Open International's obligations, based either on a breach of contract finding or on an election to affirm and enforce the Agreements, including the guarantee, after a fraudulent inducement

6

finding. There is no evidence of any misrepresentation by Open Investments, and there is no longer any evidence of an obligation of Open Investments to backstop Open International based on any misrepresentation by Open International.[4]

For these reasons, judgment should be entered in favor of Defendants and against the City on its claim of fraudulent inducement. That is doubly true as to Open Investments.

### B. The Evidence Showed that the City Did Not Justifiably Rely on Any Misrepresentations by Defendants.

In addition to a misrepresentation of existing fact, the City also had to prove it was justified in relying on that misrepresentation. But the City offered no evidence to support a finding of justifiable reliance on the timeline in the RFP response when the parties negotiated a different timeline in the Agreement, or justifiable reliance on the notion that Open had graded already-released, in-use software when the City knew that was not true. As to the status of Open's software, the City's lead negotiator for the Agreements, Mike Beckstead, testified he knew that OSF version 8.0 was unproven, untried, and unreleased when he entered into contract negotiations with Open International, and the City would be the "beta" customer. TR (Rough Oct. 24, 2023) at 13:6-16, 57:4-19, 71:5-7. Likewise, internal City due diligence documents circulated by the City's project sponsor, Lisa Rosintoski, acknowledged that the City would be the first install for unreleased OSF version 8. *See* Ex. 439 at 4-5; Ex. 473 at 6; Ex. 5 at 998. Internal City documents from June 2018 also acknowledged that part of the "unique value

---

[4] Separate from the issue of Open Investments' *liability*, Defendants moved orally on November 17, 2023 to dismiss Open Investments under Rule 52(c) in light of the City's election to rescind because that *remedy* is not available against Open Investments. Defendants will brief that issue in the rescission briefing ordered by the Court, but in short, in addition to a lack of evidence to support a finding of liability for fraudulent inducement against Open Investments, the City never conferred any contractual benefit on Open Investments that can be disgorged through rescission.

7

proposition" of the project was related to "[e]arly adoption/testing of new functionality" with Open International. Ex. 459 at 4. In short, being the first customer for an untested, unreleased version of OSF was a risk that the City knew and accepted. There is no evidence the City justifiably relied on any misrepresentation by Open International (or that Open Investments made *any* representations that were relied on).

### C. There Is No Evidence to Support a Finding that Defendants Lied with the Intent to Induce the City's Reliance.

For similar reasons, there is no evidence to support a finding that Defendants knew that any representations to the City were untrue or intended to induce the City to rely on false representations. As noted above, Open International's RFP response disclosed the true facts that OSF version 8.0 was in development and would be released in the future. Ex. 5 at 55, 312, 998. Hernando Parrott likewise gave unrebutted testimony that—both before the RFP was issued and during the vendor-selection process—he told City leaders Ms. Rosintoski and Mr. Keane, among others, that OSF Version 8.0 was being proposed but was still unreleased. TR (Rough Oct. 30, 2023) at 167:6-169:22. No reasonable jury could conclude that Defendants knowingly misled the City with intent to induce reliance when, in fact, Open International disclosed the truth (and Open Investments disclosed nothing either way). As such, judgment should enter in favor of Defendants and against the City on its fraudulent inducement claim.

### D. The Economic Loss Rule and Integration Clause Bar the City's Fraudulent Inducement Claim Based on Open International's Proposal.

In addition to its failure to adduce evidence to support the merits of its claims, the City failed to provide evidence of alleged misrepresentations that were not subsumed by the Agreements. Even if a tort duty exists independent of the contract, and "even if the duty would

8

be imposed in the absence of a contract, it is not independent of a contract that 'memorialize[s]' it." *Haynes Trane Serv. Agency v. Am. Std., Inc.*, 573 F.3d 947, 962-63 (10th Cir. 2009). Here, the City contends that Defendants fraudulently induced the City to sign the Agreements by misrepresenting facts in the RFP response. TR (Rough Oct. 23, 2023) at 98:3-100:21, 102:8-10; TR (Rough Nov. 2, 2023) at 73:17-20. But the RFP response was wholly "incorporated . . . by reference" in the Agreements and imposed as a contractual requirement. *See* Ex. 1 at 5; *see also id.* at 88-365 (functional matrix); *id.* at 366-70 (changes to functional matrix). Likewise, the project schedule was incorporated into the MPSA. Ex. 1 at 51-52. Because Open International's alleged misrepresentations were "memorialized" in the Agreements as express obligations, they are not "independent of" the Agreements and cannot substantiate a fraud claim under the economic loss rule. *Haynes*, 573 F.3d at 962-63; *see also Gilbert Unif. Sch. Dist. v. CrossPointe, LLC*, 2012 U.S. Dist. LEXIS 61254, at *11 (D. Ariz. May 2, 2012) (barring fraud claim because, "[e]ven if the statements were false, they are incorporated into the [agreement] as contractual promises for which there are contractual remedies if breached"); *1055 Inv. LLC v. 1055 E. 45th Ave. II LLC*, 2018 Colo. Dist. LEXIS 4697, at *20-23 (Denver Dist. Nov. 2, 2018) (applying economic loss rule to pre-contract misrepresentations covered by contract).

Moreover, the MSPA contains the following integration clause: "This Agreement, including all Exhibits, constitutes the final, complete and exclusive agreement between the Parties with respect to the subject matter of this Agreement, and ***supersedes any prior or contemporaneous agreement, proposal, warranties and representations***." Ex. 1 at 18 § 18.15 (emphasis added). And, as noted, the Agreements likewise incorporate the RFP response by reference and the functional matrix responses directly. Given the Agreements' incorporation of

9

the RFP response as a contract duty and the disclaimer of pre-contract representations and proposals, there is no evidence of an actionable misrepresentation.  *See Steak N Shake Enters.*, 110 F. Supp. at 1082-83 (holding integration and no-representation clauses in contract foreclosed fraudulent inducement claim).  Thus, the Agreements' integration clause also bars the City's fraudulent inducement claim.

### E.  The City's Fraudulent Inducement Claim Was Untimely and Was Waived.

Under C.R.S. § 13-80-101(1)(c), the statute of limitations for the City's fraudulent inducement claim was three years, and the unrebutted evidence at trial showed that the City knew or should have known about any factual misrepresentation regarding Open International's proposal more than three years before the City filed suit on July 2, 2021.  Open International submitted its RFP response in March 2018, and after multiple demonstrations of the product, as noted above, internal City documents from May and June 2018 acknowledged that the City would be the first install of OSF version 8.0 and that part of the City's "unique value proposition" was related to "[e]arly adoption/testing of new functionality" in that product.  Ex. 439 at 4-5; Ex. 473 at 6; Ex. 459 at 4.  Further, the City's lead negotiator of the Agreement, Mr. Beckstead, confirmed he knew before July 2018 that OSF version 8.0 was an unproven, untried, and unreleased product.  TR (Rough Oct. 24, 2023) at 13:6-16, 57:4-19; 71:5-7.  For these reasons, the statute of limitations bars the City's fraudulent inducement claim.

Moreover, waiver of fraudulent inducement arises when "the defrauded party, with full knowledge of the truth respecting the false representations, elect[s] to continue to carry out the agreement."  *Holland Furnace Co. v. Robson*, 402 P.2d 628, 630-31 (Colo. 1965).  The evidence at trial showed that the City listed in detail in late 2019 and early 2020 the very issues it

complained of in this case.  By then, the City had claimed that the portal it received was not satisfactory and was not the portal represented during vendor-selection workshops or in Open International's RFP response.  *See* Ex. 219 at 1; Ex. 464 at 3.  It had claimed by then that Open International was engaged in a "development project," rather than the implementation of an out-of-the-box system, due to functional deficiencies with OSF; OSF was not ready for the North American market; and only 58% of OSF functionality was delivered by Open when broadband went live.  *See* Ex. 76 at 1-2; Ex. 529 at 3, 6; Ex. 479 at 1.  And the City claimed by then that the contracted schedule for the implementation of OSF had been "exceptionally aggressive" and unachievable.  Ex. 720 at 8:00-8:45 (June 2, 2020 City executive testimony to City Council in support of First Amendment).  There is no evidence of a single fact supporting the City's fraud claim that the City did not know about by spring 2020.  But the City nevertheless executed the First Amendment with Open International in June 2020, Ex. 14, and then executed PCR 29, Ex. 6, both of which extended the project and assigned responsibility for additional costs to the City.  Several of the City's witnesses, including City project manager Michelle Frey, whose "eyes were opened" to Open International's supposed misrepresentations by spring 2020, testified that the City did not have to continue with the relationship; it could have, at any moment, stopped the project with Open International and completed the work with a different vendor.  TR (Rough Oct. 24, 2023) at 222:11-223:5; TR (Rough Oct. 26, 2023) at 44:17-45:1.  But it didn't.

Further, even after the City sent Open International the notice of termination letter in May 2021, Ex. 66, the City continued to work on the project.  Aaron McClune, the City's final project manager, testified that work on the project with Open International continued until July 2, 2021—over a month after the City sent its letter claiming fraud.  TR (Rough Oct. 27, 2023) at

11

49:14-18.  Travis Storin, the City's CFO, gave the same account and noted that the City continued using its OSF license from the Agreements to continue operating OSF for months after the City filed suit for fraud.  TR (Rough Oct. 23, 2023) at 205:25-206:25 (testifying that City learned no new facts between Open International's notice of default and City's filing of fraud claim seven weeks later).  Repeatedly, despite knowing the bases of its present fraud claim, the City continued with—and extended—the Agreements, thereby waiving any claim of fraudulent inducement.[5]

## II. JUDGMENT SHOULD ENTER AS A MATTER OF LAW AGAINST THE CITY AND IN FAVOR OF DEFENDANTS ON THE DUELING CONTRACT CLAIMS.

If the Court enters judgment against the City on its fraudulent inducement claim, the Court should likewise enter judgment against the City and in favor of Defendants on the parties' dueling contract claims, which may be resolved as a matter of law without a new trial.  The City's contract claim is barred, even if the City had not precluded its own recovery by electing to rescind the Agreements, because the City terminated prematurely without the required notice-and-cure opportunities, which were conditions precedent to the City's contract claim.  *Nw. Water Corp. v. Westminster*, 432 P.2d 757, 758-60 (Colo. 1967).  The City's termination letter did not identify any means to cure or provide an opportunity to cure any alleged breach of the

---

[5] Separately, Defendants argued in their Rule 50(a) motion that the City waived its right to the remedy of rescission.  Waiver of the rescission remedy implicates a different test than waiver of liability for fraudulent inducement, and rescission may be waived even if the underlying claim is not waived.  *See Elk River Assocs. v. Huskin*, 691 P.2d 1148, 1153 (Colo. App. 1984) (observing that, irrespective of whether the plaintiff waived the fraud *claim* based on "full knowledge of the truth," the *remedy* of rescission might still be waived); *Gladden v. Guyer*, 426 P.2d 953, 955 (Colo. 1967) (explaining that full knowledge is not required to waive rescission).  Because the Court did not instruct the jury on rescission and reserved for itself the resolution of remedial issues if the City elected rescission, Defendants will address waiver of the rescission remedy in briefing ordered by the Court as part of the remedial phase of the case that was tried to the bench.

Agreements, as required.  Ex. 1 at 12; Ex. 66.  Indeed, Mr. Storin testified that the City did not provide any notice of default or opportunity to cure prior to sending its May 28, 2021 notice of termination, and he testified that the City did not follow the MPSA's termination provisions.  TR (Rough Oct. 23, 2023) at 196:6-8, 250:7-13.

   While futility is not an exception under the provisions of the contract or an excuse for failing to provide pre-termination notice, *see* Ex. 1 at 12; *Carleno Coal Sales, Inc. v. Ramsay Coal Co.*, 270 P.2d 755, 756-58 (Colo. 1954) (enforcing pre-termination notice and cure provisions despite terminating party's assertion that counterparty "refus[ed] to perform"), no futility was shown because the City did not present evidence of any specific contractual obligation that Defendants could not or would not perform.  Indeed, Mr. Storin admitted that, after sending the notice of termination letter, the City wanted and expected Open International to provide a proposal to the City that would have completed the project, which the City believed was possible, so the City continued working with Open.  TR (Rough Oct. 23, 2023) at 205:25-206:25, 254:6-17.  Mr. McClune, the City's final project manager, also testified that the parties continued to work on the project in the month following the City's letter and that he thought the project could succeed with Open International.  TR (Rough Oct. 27, 2023) at 47:22-48:14.  Cure was not futile.  Accordingly, because of the City's premature termination of the MPSA in contravention of the MPSA's termination clauses, no jury could find for the City on its breach of contract claim against Defendants.

   For the same reasons, Open International is entitled to judgment on its contract claim against the City.  *See Nw. Water*, 432 P.2d at 760-61; *Carleno*, 270 P.2d at 758.  Because the evidence showed that the City did not follow the MPSA's notice-and-cure provisions, and that it

would not have been futile for the City to follow those provisions, judgment should enter in favor of Open International on its breach of contract claim against the City.

Even without disposing of the City's contract claim based on the City's violation of the MPSA's termination provisions, the City also waived its contract claim. "Waiver arises when a contractual party is entitled to assert a right, knows the right exists, and intentionally abandons that right." *Bd. of Cty. Comm'rs v. City & Cty. of Denver*, 511 P.3d 692, 702 (Colo. App. 2022). For the same reasons articulated above regarding waiver of the City's fraudulent inducement claim, the evidence showed the City's waiver of its breach of contract claim, so judgment should enter against the City on its breach of contract claim.

## III. JUDGMENT SHOULD BE ENTERED AGAINST THE CITY ON ITS MITIGATION OF DAMAGES DEFENSE.

Defendants renew their oral Rule 50(a) motion for judgment against the City on its mitigation of damages defense. TR (Rough Nov. 2, 2023) at 55:11-19. The Court decided to instruct the jury that it could find a mitigation defense in favor of the City only if the City proved Open International "failed to cease the project after it concluded it would not complete the project" and incurred "increased damages because it did not cease the project after it concluded it would not complete the project." *Citing* CJI-Civ. 5.2. The City presented no evidence that Open International ever concluded it would not complete the project, let alone evidence of any damages Open International claimed that arose after it reached such a conclusion. Rather, the City argued that Open International failed to mitigate by not disclosing a risk register from 2018, by not adequately supporting Open International's project manager Dwayne Bishop in 2018 and 2019, and by moving forward with the Milestone portal in 2019. TR (Rough Nov. 2, 2023) at 56:20-57:3. These cited events or failures from 2018 and 2019, even viewed in the light most

14

favorable to the City, are inapplicable to the City's failure to mitigate defense, which could turn only on damages incurred after Open International concluded it would not complete the project. The Court should enter judgment against the City on its mitigation of damages defense.[6]

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter judgment in their favor on all remaining claims and enter judgment against the City on its mitigation defense.

Dated: December 1, 2023          Respectfully submitted,

*s/ Paul D. Swanson*
Paul D. Swanson, pdswanson@hollandhart.com
Kevin C. McAdam, kcmcadam@hollandhart.com
Alexander D. White, adwhite@hollandhart.com
Alexandria E. Pierce, aepierce@hollandhart.com
Holland & Hart LLP
555 17th Street, Suite 3200
Denver, Colorado 80202
Telephone: 303-295-8000
*Attorneys for Open International, LLC and Open Investments, LLC*

---

[6] During trial, Open maintained its objections to the Court's decision not to require a pre-trial election of remedies but also sought a mitigating ruling to require election before the case was submitted to the jury. Open maintains that the failure to require a pretrial election was prejudicial error but intends to raise the issue as part of its post-judgment motion under Rule 59 rather than in this Rule 50 Motion.

15

**CERTIFICATE OF SERVICE**

I hereby certify that on the 1st day of December, 2023, the foregoing was electronically filed with the Clerk of Court using the Court's electronic filing system and that a copy of the foregoing was sent to all counsel of record via same in compliance with the Federal Rules of Civil Procedure and the Local Rules of this Court.

<u>*s/ Paul D. Swanson*</u>

30907226