IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:21-cv-02063-CNS-SBP

CITY OF FORT COLLINS, a Colorado home rule municipality,

     Plaintiff,

v.

OPEN INTERNATIONAL, LLC, a Florida limited liability company and
OPEN INVESTMENTS, LLC, a Florida limited liability company,

     Defendants.

---

**ORDER**

---

     This matter comes before the Court on Defendants' Motion for Judgment under Rule 52(c), ECF No. 314, as well as the parties' respective closing briefs regarding amounts, if any, which may be recovered in recission by Plaintiff, the City of Fort Collins (the City), *see* ECF Nos. 314, 315.[1]

     On November 3, 2023, a jury determined that Defendants, Open International, LLC and Open Investments, LLC (collectively, Open) had fraudulently induced the City to enter into the Agreements[2] for the development of billing software. *See* ECF No. 296. One day prior, the Court granted the City's motion for judgment as a matter of law with respect to

---

[1] Unless otherwise noted, record citations are to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generate page numbers placed at the top of the documents.

[2] These Agreements included the Master Professional Services Agreement, Scope of Work, and First Amendment to the MPSA.

Open's affirmative defenses of laches and unclean hands, finding that Open had failed to prove either. *See* ECF No. 312 at 54:6–22. Following the jury's fraudulent inducement determination, the City elected to rescind the Agreements. ECF No. 313 at 31:7–12. On November 17, 2023, the Court held a hearing at which the parties presented expert testimony on appropriate restitution amounts in recission.[3] *See generally* ECF No. 301. At the hearing's conclusion, the Court further invited the parties to brief the issue of amounts owed to the City in restitution. *See id.* at 132:18–134:8. That issue is now fully briefed.

Broadly speaking, the parties' briefing centers on five categories of expenses requested by the City: (1) amounts the City paid to Open under the Agreements; (2) amounts the City paid to third-party consultants; (3) the City's labor costs; (4) the City's lost net revenue; and (5) the City's attorney's fees and costs. *See* ECF No. 315 at 2. The City further requests pre-judgment interest for categories (1) through (4), and post-judgment interest in all five categories. *Id.* Separately, Open includes a motion for judgment under Rule 52(c) in its restitution brief, arguing that the City waived recission as a remedy and that recission liability cannot lie against Open Investments. *See* ECF No. 314 at 2–8.

---

[3] "When a party recovers money damages in connection with recission, those damages are more accurately called restitution: The term recission refers to the avoidance of the transaction or the calling off of the deal," whereas restitution (commonly in the form of monetary payment) occurs once the transaction is avoided. *Szaloczi v. John R. Behrmann Revocable Trust*, 90 P.3d 835, 841 n.8 (Colo. 2004) (citations omitted); *accord EarthInfo v. Hydrosphere Resource Consultants, Inc.*, 900 P.3d 113, 118 (Colo. 1995) (rescission of the parties' exchange in the form of restitution "seeks to prevent unjust enrichment of the defendant").

## I.  LEGAL STANDARD

"A plaintiff who has been fraudulently induced to enter a contract may either rescind the contract or affirm the contract and recover in tort for the damages caused by the fraudulent act." *W. Cities Broad., Inc. v. Schueller*, 849 P.2d 44, 48 (Colo. 1993) (citing *Trimble v. City & Cnty. of Denver*, 697 P.2d 716, 723 (Colo. 1985)). When the victim of fraudulent inducement elects rescission, they are "limited in remedy to restoration of conditions existing before the agreement was made." *Trimble*, 697 P.2d at 724. Put differently, recission requires each party to "return the opposite party to the *status quo ante*, or the position in which he or she was in prior to entering the contract." *EarthInfo*, 900 P.2d at 118 (citations omitted).

In rescission, a return to the *status quo ante* entails that each party:

> (a) restores property received from the other, to the extent such restoration is feasible; (b) accounts for additional benefits obtained at the expense of the other as a result of the transaction and its subsequent avoidance, as necessary to prevent unjust enrichment; and (c) compensates the other for loss from related expenditure as justice may require.

Restatement (Third) of Restitution & Unjust Enrichment § 54(2) (Am. L. Inst. 2011).

"The rule of returning the parties to the *status quo ante* is equitable and it requires the use of practicality in the readjustment of the parties' rights." *EarthInfo*, 900 P.2d at 118 (citation omitted). "Since recission is an equitable remedy, it is within the trial court's sound discretion to determine the method for accomplishing a return to the status quo ante based upon the facts as determined by the trier of fact." *Id.* (citations omitted); *see Rice v. Hilty*, 559 P.2d 725, 727 (Colo. App. 1976) ("Equity may fashion a remedy to effect justice suitable to the circumstance of the case."). And in exercising its discretion, this

Court is guided by the ultimate principle that "one should not gain by one's own wrong." *EarthInfo*, 900 P.2d at 117 (citation omitted).

## II.  DISCUSSION

The Court has carefully reviewed the parties' closing briefs, the exhibits attached thereto, the record from the parties' trial conducted between October 23 through November 3, 2023, the record from the parties' recission hearing held on November 17, 2023, the entire case file, and the relevant case law. In light of these authorities, the Court denies Open's Rule 52(c) motion. The Court then considers each of the City's five categories of requested expenses, as well as the City's request for pre-judgment interest.

### A.  Open's Motion for Judgment under Rule 52(c)

Open first moves for judgment against the City—purportedly pursuant to Federal Rule of Civil Procedure 52(c)—on two grounds: (i) the City waived its right to elect recission as a remedy in this case, and (ii) there is no evidence to support a judgment of recission against Open Investments. ECF No. 314 at 2–8.

However, as the City correctly observes, *see* ECF No. 320 at 3, the procedures outlined in Rule 52(c) are reserved for nonjury trials. *Goodwin v. Smith Chambers*, No. 21-cv-3421-WJM-STV, 2024 WL 517865, at *14 (D. Colo. Feb. 9, 2024) ("If a party has been fully heard on an issue during the nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party.") (quoting Fed. R. Civ. P. 52(c)). Here, the action was tried to a jury—including Open's affirmative defense of waiver. *See* ECF No. 309 at 152:14–22, 155:8–156:5. Following the jury's fraudulent inducement verdict in the City's favor and the City's subsequent election to rescind the

4

Agreements, the Court held a hearing at which the *only* issue before the Court was proper restitution amounts in recission. *Id.* at 154:12–155:6; *see generally* ECF No. 301. As such, Open's post-verdict challenges to its liability to the City are more appropriately brought under Rule 50(b).

Despite this, in the hopes of obviating the need to address these matters in the future, the Court addresses each of Open's arguments in turn.

### 1. Waiver of the right to rescind

Open first argues that no restitution amounts in recission are owed to the City because, notwithstanding the jury's clear verdict that the City did not waive its fraudulent inducement claim, the City nonetheless waived its right to rescind the Agreements. *See* ECF No. 314 at 2.

In making this argument, Open suggests that waiver of *fraudulent inducement* (as a claim) and waiver of *recission* (as a remedy) are governed by different tests, and while fraudulent inducement waiver was presented to the jury, recission waiver was reserved to the Court as an equitable matter and must be decided now.[4] Indeed, according to

---

[4] Interestingly, though, Open's arguments throughout this case have not always maintained this purported "fraudulent inducement waiver" and "recission waiver" distinction. At the summary judgment stage, for instance, Open argued that the City had *waived its fraudulent inducement claim.* ECF No. 125 at 27–30. But later in its briefing on election of remedies, Open claimed that it had earlier argued at the summary judgment stage that the City had "*waived recission* by electing to affirm the contract." ECF No. 232 at 3 (citing ECF No. 125 at 27–30) (emphasis added).

Similarly, Open's election briefing claimed that "[i]n response to the City's claims, Open pleaded the affirmative defense of waiver." ECF No. 232 at 3. But if, as Open maintains, waiver of fraudulent inducement (as a claim) and waiver of recission (as a remedy) constitute separate defenses, it would appear that Open specifically pleaded the former as an affirmative defense, but never the latter. *See* ECF No. 13 at 14 ("The City's *claims* are barred by the doctrines of waiver and estoppel.") (emphasis added); ECF No. 194 at 18 (same).

Closely related, although the Court clarified at trial that all waiver-related defenses would be encompassed in a single instruction (i.e., the COLJI pattern instruction), *see* ECF No. 309 at 155:8–156:5, Open did not

Open, it is legally possible that, "irrespective of whether the plaintiff waived the fraud claim, the remedy of recission, if elected, might still be waived." ECF No. 314 at 3.

For this proposition, Open points to semantic differences between two Colorado cases purportedly demonstrating that fraudulent inducement waiver and recission waiver involve separate analyses. *See* ECF No. 314 at 3. In *Gladden v. Guyer*, the Colorado Supreme Court stated:

> The duty of rescinding arises immediately upon acquiring knowledge of the substantial and material facts constituting the fraud. *It is not requisite that the defrauded party shall be acquainted with all the evidence constituting the fraud before the duty to act by way of rescission arises.* When he has evidence sufficient to reasonably actuate him to rescind the contract . . . , no subsequent discovery of cumulative evidence can operate to execute waiver of the fraud if one has in the meantime occurred, or to revise a once lost right of rescission.

426 P.2d 953, 956 (Colo. 1967) (emphasis added) (quoting *Richardson v. Lowe*, 149 F. 625, 631 (8th Cir. 1906) (internal citations omitted)).

By way of comparison, in *Elk River Associates v. Huskin*, the Colorado Court of Appeals stated: "To sustain the defense of ratification and waiver, it must appear that the defrauded party, *with full knowledge of the truth respecting the false representations,* elected to continue to carry out the agreement. This determination involves questions of

---

object to the unified waiver instruction at the parties' charging conference, *see* ECF No. 312 at 6:24–7:13. Nor did it propose any additional or different instructions for "recission waiver" in its "tendered and rejected" instructions. *See* ECF Nos. 284, 289, 290, 294.

Based on the foregoing, it seems that even Open has conflated these "two" waiver standards on numerous occasions.

fact, particularly the fact of intent." 691 P.2d 1148, 1153 (Colo. App. 1984) (emphasis added).

Based on the above principles, Open argues that *Gladden* and *Elk River* apply two different waiver tests—i.e., fraudulent inducement waiver requires "full knowledge of the truth" regarding the fraud, whereas recission waiver requires only "knowledge of the substantial and material facts constituting the fraud." ECF No. 314 at 3. Open then argues that *Gladden*'s purported "recission waiver" test is for the Court to apply, and further suggests that, under *Gladden*, the City's duty to rescind is tied to a lower threshold—i.e., its discovery of problems with Open's software, rather than its discovery that Open's defective software was a product of its fraud. *Id.* at 3–5.

The trouble for Open, however, is that Colorado courts do not treat fraudulent inducement waiver and recission waiver as separate claims, governed by different tests, and decided by different factfinders. Indeed, courts in this district have treated the language in *Gladden* and *Elk River* as consistent, if not wholly equivalent. *See, e.g.*, *In re Mascio*, 454 B.R. 146, 151 (D. Colo. 2011) ("To sustain the defense [of waiver], 'it must appear that the defrauded party, with *full knowledge* of the truth respecting the false representations, elected to continue to carry out the agreement.' *Elk River Assocs. v. Huskin,* 691 P.2d 1148, 1154 (Colo.App.1984) (emphasis added). Full knowledge entails 'knowledge of the substantial and material facts constituting the fraud.' *Gladden v. Guyer,* 162 Colo. 451, 426 P.2d 953, 955 (1967).").

At bottom, fraudulent inducement waiver and recission waiver comprise *a single analysis*—under Colorado law, a party's "right to rescind and sue [is] waived" where "the

defrauded party, with full knowledge, intentionally condoned the fraud," and "[w]hether fraud has been waived involves questions of fact, particularly the fact of intent," which are "properly for the jury." *Bankers Trust Co. v. Int'l Trust Co.*, 113 P.2d 656, 664 (Colo. 1941). In this case, this exact standard for deciding the question of waiver was presented to the jury in a single instruction, *see* ECF No. 285 at 24 (Instruction No. 23), without objection from either party, *see* ECF No. 312 at 6:24–7:13, and the jury decided the waiver question in the City's favor,[5] *see* ECF No. 296. The Court therefore sees no reason to disturb the jury's clear verdict on the waiver issue by passing separately upon the City's right to rescind.

Accordingly, Open's motion as to this "recission waiver" issue is denied.

### 2. Recission against Open Investments

Next, Open argues that the City failed to adduce evidence to support judgment in recission against Open Investments. *See* ECF No. 314 at 6–8. According to Open, the evidence at trial established that Open Investments' sole link to this case was as a contractual guarantor for Open International, and that Open Investments was uninvolved in the fraudulent conduct at issue. *See* Tr. Ex. 1 at 4 (setting forth Open Investments' "unconditional[] guarantee [of] the performance of Open International of all obligations set forth in [the] MPSA and Software License Agreement"); ECF No. 305 at 15:17–16:10; ECF No. 311 at 67:22–68:7; Tr. Ex. 66 at 1 (accusing only "Open International LLC" of

---

[5] Indeed, as the City correctly observes, "[a]ll of the purported facts relied on in Open's [m]otion to assert a waiver of recission are the *same facts* that the jury considered when denying Open's affirmative defense of waiver." ECF No. 321 at 4 (citing ECF No. 314 at 2–4) (emphasis in original). And for this reason, to the extent that Open argues that the City failed to adduce sufficient facts at trial showing that it sought to rescind promptly, the Court reserves its analysis on this issue for Open's Rule 50(b) motion.

breach and fraud). Open further observes that the RFP Response underlying the City's fraudulent inducement claim was submitted by Open International, *see* Tr. Ex. 5, all payments under the now-rescinded Agreements were made to Open International, *see* Tr. Ex. 522, and Open Investments never received any payment or benefit from the City that would be returnable as restitution. As such, Open contends, now that the City has elected to rescind the Agreements, Open Investments' liability in this case—arising solely in contract—has effectively dissipated. *See* ECF No. 314 at 7–8.

For substantially the reasons outlined by the City in its response to Open's motion, the Court agrees that this argument disclaiming any liability of Open Investments comes far too late. *See* ECF No. 320 at 7–11. If, as Open claims, the City failed to adduce any evidence of Open Investments' liability for fraudulent inducement independent of its liability under the Agreements, Open never once raised this issue at trial or in its oral Rule 50(a) arguments. *See* ECF No. 309 at 142:10–1448:23; ECF No. 312 at 49:5–52:19, 55:8–56:23. Nor did Open raise this issue in its written Rule 50(a) motion memorializing its earlier oral argument.[6] *See* ECF No. 282. Similarly, Open failed to separate liability for each entity, and in fact affirmatively represented itself "collectively" or "together" as "Open," throughout the entirety of the case—including in its notice of removal, answer,

---

[6] Indeed, Open only advanced a full-throated argument on this issue *for the first time* in its written Rule 50(b) motion. *See* ECF No. 302 at 6–8. Given that final judgment has yet to enter in this case, however, the Court defers consideration of this argument, except to note that if Open maintains its argument that recission liability does not lie against Open Investments, this argument is probably already waived as unraised at the Rule 50(a) stage. *See Garcia v. Aerotherm Corp.*, No. 98-2214, 1999 WL 124486, at *3 (10th Cir. Dec. 21, 1999) ("[I]ssues not raised in an initial Rule 50(a) motion for judgment as a matter of law may not be asserted in a post-judgment motion for judgment as a matter of law under Rule 50(b)."); *Brillhart v. Philips Elecs. N. Am. Corp.*, 179 F.3d 1271, 1275 (10th Cir. 1999) ("Failure to so move precludes a post-trial motion . . . for judgment as a matter of law . . . .").

partial motion for summary judgment, amended answer, final pretrial order, motion in limine, trial brief, and written Rule 50(a) motion. *See generally* ECF Nos. 1, 13, 125, 194, 230, 240, 256, 282.

Perhaps most significantly, Open did not object to language included in the jury instructions and verdict form applying liability for fraudulent inducement jointly to the entities.[7] *See* ECF No. 285; ECF No. 296; ECF No. 312 at 3:3–32:20. As such, there is now a fraudulent inducement verdict against *both* Open International and Open Investments, and the Court is not at leisure to "undo" the verdict against one of them, or to order restitution from only one of them. *See Farm Bureau Life Ins. Co. v. Am. Nat'l Ins. Co.*, 408 F. App'x 162, 172 (10th Cir. 2011) ("[A] party waives its right to present a legal argument on appeal by failing to object to [the] jury instruction[s] which authorized the verdict.") (citations omitted); *see also Glass Containers Corp. v. Miller Brewing Co.*, 643 F.2d 308, 312 (5th Cir. 1981) ("[A] litigant cannot strategically lie behind the log until after the trial and the receipt of evidence, argument, and charge to the jury before raising an issue not found in the pleadings nor included in the pre-trial order and them raise it when it is too late for his opponent to do anything about it."). Simply put, Open's request for this Court to reconsider the evidence and make a separate determination of Open Investments' liability when it was not an issue at trial is inappropriate.

As such, Open's motion seeking to avoid Open Investments' liability in recission is denied.

---

[7] In fact, Open agreed to the City's request that element 5 of the elemental instruction on fraudulent inducement be clarified to state "Open's representation" rather than just "the representation." *See* ECF No. 312 at 5:4–10; ECF No. 285 at 16 (Instruction No. 15).

### B.  The City's Restitution Requests

Having determined that judgment in Open's favor is unwarranted, the Court next considers each of the City's requested restitutionary amounts. As set forth below, the Court, in its equitable power and broad discretion, awards judgment in the City's favor on its project costs, third-party consulting costs, and labor costs. The Court declines, however, to grant the City's requests to recover its lost net revenue or attorney's fees.

#### 1.  Amounts paid under the Agreements

First, the City seeks to recover $8,756,659 in amounts it paid to Open for the billing software contracted for in the Agreements.[8] *See* ECF No. 315 at 4–6; *see also* ECF No. 315-2 at 3; ECF No. 301 at 17:20–20:7 (testimony of the City's damages expert, Ronald Seigneur). The Court agrees that the City is entitled to recover this amount in restitution.

Put simply, the relevant law is well settled that under the City's elected remedy of recission, Open should return any project costs the City paid pursuant to the Agreements. *See Aaberg v. H.A. Harman Co.*, 358 P.2d 601, 603 (Colo. 1960) ("Upon discovery of the fraud, plaintiff had the right . . . to rescind the contract and sue for the return of the money paid."); *Rice*, 559 P.2d at 727 (in recission, awarding restitution in the form of "whatever consideration [defendants] received under the contract"); *In re Sun*, 535 B.R. 358, 370 (10th Cir. Bankr. App. Panel 2015) (in recission, awarding restitution in the form of amounts paid under the parties' contract plus interest); *see also* Restatement (Third) of Restitution & Unjust Enrichment § 54(1) (Am. L. Inst. 2011) ("A person who has

---

[8] In particular, the City specifies that beginning in September 2018, the City paid Open $8,756,659 over the course of 33 months pursuant to the Agreements. *See* Tr. Ex. 743 at Sch. H.

transferred money or other property is entitled to recover it by recission and restitution if the transaction is invalid or subject to avoidance . . . ."); *id.*, § 13(1) ("A transfer induced by fraud or material misrepresentation is subject to recission and restitution.").

Notwithstanding this clear authority, Open argues that no restitution in the form of project costs should be awarded, because the $8,756,659 in amounts the City paid under the Agreements is fully offset by the value of the services Open contributed to the project at the City's behest, which were purportedly worth more than $20 million.[9] ECF No. 314 at 8–10, 12–14; ECF No. 321 at 7–9. More specifically, Open argues that regardless of the jury's finding of Open's liability for fraudulent inducement, recission is properly effectuated by "restitution on both sides." ECF No. 314 at 9 (quoting *EarthInfo*, 900 P.2d at 118). In turn, when the consideration given by Open is properly accounted for— "mak[ing] 'some apportionment' between the amounts obtained through misconduct and the amounts the defendant rightly earned independent of its misconduct," ECF No. 314 at 10 (quoting *EarthInfo*, 900 P.2d at 120)—any award of the City's project costs would be completely offset by the value of services performed by Open, thereby rendering restitution in the form of project costs impermissible.

In advancing this argument, Open relies heavily on *EarthInfo* for the proposition that even where a defendant's wrongdoing warrants recission, a trial court must still credit

---

[9] On this point, Open's damages expert, Peter Schulman, testified that during the three years that Open worked on the project, it provided 101,880 hours of implementation services and 22,105 hours of support services, which were worth $117 per hour, plus 29,353 hours of product and technology development services, which were worth $116 per hour—all for a total of $17,911,166 of services. *See* ECF No. 301 at 72:17–75:7, 80:10–24, 81:7–82:20. Furthermore, Mr. Schulman testified that during the same period, Open provided the services of its subcontractor, Milestone, for which Open paid $2,682,785. *See id.* at 80:21–81:6, 81:25–82:6, 82:21–83:6.

the defendant for having "materially contributed effort and investment" into the parties' contractual relationship. *See EarthInfo*, 900 P.2d at 120–21; *see id.* at 120 ("Even the willful wrongdoer should not be made to give up that which is his own; the principle is disgorgement, not plunder.") (citation omitted). Open's reliance on *EarthInfo* in this regard, however, is misplaced. In that case, recission was sought based on a party's breach of the contractual obligation to make payments, *not* fraud inducing a party's entry into the contract in the first instance. *See EarthInfo*, 900 P.2d at 115–17. This distinction matters—*EarthInfo* instructs that recission is both equitable in nature and dependent on the defendant's level of wrongdoing. *See id.* at 119. And while "a 'mere' breach of contract is not a 'wrong'" that strips a defendant of his entitlement to restitution, more "intentional or substantial" wrongdoing may change the equitable calculus with respect to the defendant's retention of benefits under the contract. *Id.* at 117, 119 (citations omitted); *see id.* at 117 ("It is a principle of the law of restitution that one should not gain by one's own wrong.") (citation omitted).

In this case, Open was found to have committed a higher level of wrongdoing than "a mere breach of contract"—indeed, a jury determined that Open fraudulently induced the City into executing the contract. In that light, Open's request for setoff of amounts it earned under a fraudulently procured contract would seem to offend basic principles of equity—i.e., if granted, Open's requested setoff would "allow it to commit fraud, keep and use [its] software, and keep the nearly $9 million it was paid by the City because it 'earned these amounts not by fraud but by work the City requested and accepted.'" ECF No. 326 at 3 (quoting ECF No. 321 at 8). As such, the Court will not credit Open for the work it did

after its fraud.[10] *See Arguelles v. Ridgeway*, 827 P.2d 553, 557 (Colo. App. 1991) ("A party who seeks equity must do equity, and a party may not take advantage of his or her own wrongful acts. A court will not lend its equitable aid to a party who is guilty of fraudulent or unconscionable conduct . . . .") (citations omitted); *accord* Restatement (Third) of Restitution & Unjust Enrichment § 54(3)(b) (Am. L. Inst. 2011) ("Recission is limited to cases in which counter-restitution by the claimant will restore the defendant to the status quo ante, unless the fault of the defendant . . . makes it equitable that the defendant bear any uncompensated loss."); *id.*, § 54(4)(a) ("If the claimant seeks to reverse a transfer induced by fraud or other conscious wrongdoing, the limitation described in subsection (3) is liberally construed in favor of the claimant."); *see also PHL Variable Ins. Co. v. P. Bowie 2008 Revocable Trust*, 889 F. Supp. 2d 275, 281 (D.R.I. 2012) (the law does not "allow an entity to commit an intentional and calculated fraud . . . and walk away unscathed while the innocent party bears the financial burden of the fraud"); *McKay v. Weager*, 134 N.Y.S. 66, 69 (N.Y. 1911) (a claim cannot be used as a setoff where the transaction out of which it arose was fraudulent); *Duncan v. Dazey*, 318 Ill. 500, 505 (Ill. 1925) ("Equity will not permit a person to derive any benefit from a fraud perpetrated by him.").

In sum, the Court awards judgment in the City's favor in the amount of $8,756,659 for project costs it paid to Open during the course of the parties' Agreements. The Court

---

[10] This is especially true in light of testimony at trial suggesting that (i) the City *never* received a fully functional version of Open's software, but Open continued to develop it with the City's assistance, and (ii) after the software was returned to Open's control, Open proceeded to profit from it in connection with other North American municipal projects. *See* ECF No. 311 at 58:19–21; *see also* ECF No. 320 at 13.

further declines to award Open any credit or setoff against this amount, as Open will not be compensated for its fraud.

### 2. Amounts paid to third-party consultants

Second, the City seeks to recover $456,024 in amounts it paid to third-party consultants, TMG Consulting and Vanir Construction Management.[11] *See* ECF No. 315 at 6–7; *see also* ECF No. 315-2 at 3; ECF No. 301 at 6:24–10:25 (Seigneur testimony). The City contends that it is entitled to recover these amounts because, "but for Open's fraud, it would not have needed to hire or pay TMG or Vanir to provide consulting or project management services on the Project with Open." ECF No. 315 at 6. In response, Open argues that the amounts the City paid to its third-party consultants (as well as the amounts representing the City's own labor costs, discussed below) would aim to reimburse the City for its expenditures actually made in performance of the Agreements and, as such, are reliance damages that are unavailable in the recission context. ECF No. 315 at 3 (citing *Spring Creek Exploration & Prod. Co., LLC v. Hess Bakken Invs. II, LLC*, 887 F.3d 1003, 1026 (10th Cir. 2018)).

Broadly speaking, a claimant who has elected recission is "limited in remedy to restoration of conditions existing before the agreement was made"—i.e., the simple return of any consideration each party gave pursuant to the contract. *Trimble*, 697 P.2d at 724; *see EarthInfo*, 900 P.2d at 118 (restitution "differs in principle from damages, which measure the remedy by the plaintiff's loss and seek to provide compensation for that

---

[11] More specifically, the City paid Vanir $169,917 in 2020 and an additional $86,810 in 2021 for project management services. *See* Tr. Ex. 743 at Sch. K3. The City also paid TMG a total of $199,297 for consulting services on the project in 2021. *See* Tr. Ex. 349 (yellow and green highlighting).

loss"). However, recission may still leave the claimant with losses from related expenditures—separate from any consideration given under the contract—that were made in reliance on the contract. While these reliance damages constitute a remedy "different in kind from recission and restitution," they are "not necessarily inconsistent when the claimant's basic entitlement is to be restored to the status quo ante." Restatement (Third) of Restitution & Unjust Enrichment § 54 cmt. i (Am. L. Inst. 2011). Indeed, "[d]amages measured by the claimant's expenditure can be included in the accounting that accompanies recission, in order to do complete justice in a single proceeding." *Id.*; *see Trimble*, 697 P.2d at 724 ("The defrauded party may recover such damages as are a natural and proximate consequence of the fraud.").

Here, the City's third-party consultant costs were directly related to its performance under the Agreements—performance which would not have occurred at all, but for the City having been induced by fraud into entering the Agreements. In that light, the City's request to recover these costs appears to the Court to be eminently reasonable. *See Rice*, 38 P.2d at 340–41 (directing the lower court to consider "the reasonable value of services" in determining recission amounts due based on fraud); *Elliott v. Aspen Brokers, Ltd.*, 811 F. Supp. 586, 591 (D. Colo. 1993) (while a claimant in recission may not recover expectancy or "benefit-of-the-bargain" damages, the claimant's out-of-pocket expenses nonetheless remain available); *see also* Restatement (Third) of Restitution & Unjust Enrichment § 54(2)(c) (Am. L. Inst. 2011) (in recission, each party "compensates the other for loss from related expenditure as justice may require"); *Robinson v. Katz*, 610 P.2d 201, 207 (N.M. Ct. App. 1980) (explaining that restitutionary damages are "permissible to

restore the plaintiff to his former position when recission is granted because of fraud"); *Gearhart v. Goehner*, 701 P.2d 461, 467 (Or. Ct. App. 1985) ("Where rescission is based on fraud, and where the innocent party, before discovering the fraud, has made reasonable expenditures in reliance on the bargain, those expenses may be recovered upon rescission.") (citation omitted).

Accordingly, the Court awards judgment in the City's favor in the amount of $456,024 for its payments to TMG and Vanir during the course of the parties' Agreements.

### 3. Labor costs

Third, the City seeks to recover $4,376,969 in services rendered by City personnel in connection with the project with Open. *See* ECF No. 315 at 7–9; *see also* ECF No. 315-2 at 3; ECF No. 301 at 20:8–24:9 (Seigneur testimony). As the City contends, it "was required to incur significant amount[s] [in] resources and labor costs in order to implement the Project that it would not have incurred but for Open's fraudulent conduct," and because Open's software did not function as promised, the City's employees had to spend extra time "testing, improving, and effectively developing Open's product."[12] ECF No. 315 at 8. Once more, Open disputes the City's entitlement to these amounts, arguing that reliance damages are impermissible in recission. ECF No. 321 at 3.

For the reasons discussed above in connection with the City's request to recover its third-party consulting expenses, the Court agrees that the City's request to recover its

---

[12] In particular, the City explains that, per the parties' Agreements, it was required to staff a certain number of full-time equivalents (FTEs) on the project, and that from August 15, 2018, to January 15, 2021, the City employed an average of 12 business FTEs at $80/hour and 6 IT FTEs at $100/hour, each for an estimated five hours per day. *See* Tr. Ex. 743 at Sch. M; ECF No. 307 at 130:13–131:6; ECF No. 309 at 213:11–14.

own labor costs is similarly reasonable. *See Rice*, 38 P.2d at 340–41; *Elliott*, 811 F. Supp. 586 at 591; *see also* Restatement (Third) of Restitution & Unjust Enrichment § 54(2)(c) (Am. L. Inst. 2011). Thus, the Court awards judgment in the City's favor in the amount of $4,376,969 in labor costs it incurred during the course of the parties' Agreements.

### 4. Lost net revenue

Fourth, the City seeks to recover $3,389,467 in revenue lost from the project's delays and the City's resultant loss of customers. *See* ECF No. 315 at 9–10; *see also* ECF No. 315-2 at 3; ECF No. 301 at 11:4–17:19 (Seigneur testimony). Here, the City argues that "[h]ad Open not defrauded the City, the City could and would have chosen a different vendor . . . , the Project would have proceeded on time, the City would not have experienced the delayed customer growth it did with Open, and the City would not have lost customer revenue."[13] ECF No. 315 at 9. In response, the City contends that the lost profits the City had anticipated earning from future subscribers amount to expectation damages and, as such, are unavailable in recission. ECF No. 321 at 3–4.

Here, the Court finds that Open has the better of this argument. Unlike the City's requests to recover amounts it paid for labor and third-party consultants—expenditures it had actually made, and reimbursement for which would aid in its return to the *status quo ante*—projected revenues represent benefits the City would have realized *after* the

---

[13] More specifically, the City contends that its "ability to add broadband customers was constrained because using Open's poorly functioning software required manual processes for tasks that should have been automated," and that "[t]he inoperability of Open's system prevented the City from introducing certain broadband products, which further resulted in lost business opportunities for the City." ECF No. 315 at 9. Mr. Seigneur estimated that the City likely lost 6,632 customers, each of whom was expected to bring annual revenue of $1,081 to the City as of July 2022. In total, Mr. Seigneur calculated that the City would lose $3,389,467 in revenue through 2026. *See* Tr. Ex. 743 at 14–16; *id.* at Sch. F1.

Agreements' successful completion, not *before* the Agreements were ever executed. Simply put, these expectancy damages are not recoverable given the City's election to rescind. *See In re Sun*, 535 B.R. at 370 n.33 (if the plaintiff elects recission of the contract, rather than ratification, benefit-of-the-bargain damages are not available); *accord Rice*, 559 P.2d at 727; *Elliott*, 811 F. Supp. at 591; *see also Holscher v. Ferry*, 280 P.2d 655, 658 (Colo. 1955) ("It is a well-settled rule of law that, when a party has an election to rescind an entire contract, he must rescind it wholly or in no part. He cannot consider it void for one purpose, and at the same time in force for the purposes of recovering damages.").

As such, the Court declines to award the City any amounts in connection with its lost net revenue.

### 5. Attorney's fees and costs

Fifth, the City seeks to recover attorney's fees and costs it incurred in pursuing this action against Open. *See* ECF No. 315 at 10–13. Under the circumstances, the Court is not persuaded that an award of attorney's fees is permissible, let alone warranted.

"Under the bedrock principle known as the 'American Rule,' each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 382 (2013) (internal citations and quotation marks omitted). Notwithstanding the American Rule, the City points to the U.S. Supreme Court's purported recognition that federal courts sitting in equity possess the power to award attorney's fees in "exceptional cases and for dominating reasons of justice." *See* ECF No. 315 at 10–11 (quoting *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 167 (1939)); *see also*

*Sprague*, 307 U.S. at 164 (explaining that awards of attorney's fees and costs in appropriate situations, aside from those costs contemplated by statute, "is part of the historic equity jurisdiction of the federal courts").

By contrast, Open argues that the City's request for attorney's fees is premised on a misreading of *Sprague*, which more narrowly permitted "the trustee of a fund or other property" to recover attorney's fees in equity "from the fund or property itself or directly from the other parties enjoying the benefit." *See* ECF No. 321 at 10–11 (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257–58 (1975) (construing *Sprague*)). According to Open, the trustee exception identified in *Sprague* is one of the few "judicially fashioned exceptions to the general rule against allowing substantial attorney's fees," and it does not extend to any and all actions in equity.[14] *Id.* at 10 (quoting *Alyeska Pipeline*, 421 U.S. at 259–60); *see Alyeska Pipeline*, 421 U.S. at 260 (Congress has not "extended roving authority to the Judiciary to allow counsel fees as costs or otherwise whenever the courts might deem them warranted").

A careful reading of the Supreme Court's jurisprudence in this area would tend to support Open's position. Although the Court presently sits in equity to determine restitution amounts in a case in which Open was found to have acted fraudulently, the Court is "not free to fashion drastic new rules with respect to the allowance of attorney's fees to the prevailing party in federal litigation." *Alyeska Pipeline*, 421 U.S. at 269. Aside

---

[14] Other "judicially fashioned exceptions" to the American Rule recognized by the Supreme Court have included assessment of attorney's fees "for the willful disobedience of a court order . . . as part of the fine to be levied on the defendant," or "when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska Pipeline*, 421 U.S. at 258–59 (collecting cases). The City does not invoke these exceptions here.

from the few judicially recognized exceptions to the American Rule noted above, Congress has "reserved to itself" the power "to carve out specific exceptions to [the] general rule that federal courts cannot award attorney's fees." *Id.* Thus, absent a specific statute or a valid contractual provision authorizing an award of attorney's fees, the Court declines to grant any.[15] *Marx*, 568 U.S. at 382.

For these reasons, the Court declines to award the City its attorney's fees and costs in connection with this action.

### 6. Pre-judgment interest

Finally, the City seeks pre-judgment interest (PJI) on the restitution categories identified above, to be calculated on a compound annual basis from April 15, 2023, through the date of final judgment. *See* ECF No. 315-2; *see also* ECF No. 315 at 5–6 (PJI for project costs), 7 (PJI for third-party consultant costs), 8–9 (PJI for labor costs), 10 (PJI for lost net revenue).[16]

An award of pre-judgment interest "rests firmly within the sound discretion of the trial court." *E.E.O.C. v. W. Trading Co., Inc.*, 291 F.R.D. 615, 621 (D. Colo. 2013) (quoting *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1287 (10th Cir. 2002)). "A two-step analysis governs the determination of such an award." *Id.* (quoting *Caldwell*, 287 F.3d at

---

[15] Even assuming that attorney's fees were authorized, the Court sees little reason to award them as a matter of equity. In particular, the City unnecessarily prolonged this litigation by refusing to elect among its available remedies until forced to do so by the Court. Had the City chosen either to rescind or affirm the Agreements much earlier in the case, the parties' trial likely would have been half as long, and the issues half as complex. The Court is not inclined to reward the City's counsel for this strategery. *See Kline Hotel Partners v. Aircoa Equity Interests, Inc.*, 729 F. Supp. 740, 743 (D. Colo. 1990).

[16] As discussed above, the Court in its discretion has declined to award any amounts in connection with the City's lost net revenue.

1286). In exercising its discretion, "[t]he district court must first determine whether the award of pre-judgment interest will serve to compensate the injured party. Second, even if the award of pre-judgment interest is compensatory in nature, the district court must still determine whether the equities would preclude the award of pre-judgment interest." *Id.*

Here, the Court finds that awarding PJI to the City would be compensatory rather than punitive. As noted by the Tenth Circuit in *Caldwell*, "the rule in this circuit is that pre-judgment interest is generally available to compensate the wronged party for being deprived of the monetary value of his loss from the time of the loss to the payment of the judgment." *Caldwell*, 287 F.3d at 1286 (citation omitted). Awarding PJI on the City's project costs, third-party consulting costs, and labor costs would simply put the City in the position it would have been but for Open's fraudulent conduct; as such, PJI in this case would serve to compensate the City rather than punish Open.

Similarly, the Court finds that awarding PJI to the City would not be inequitable. The Tenth Circuit has held that "pre-judgment interest should normally be awarded on successful federal claims." *W. Trading Co.*, 291 F.R.D. at 621 (citations omitted). Nothing in this case removes it from the norm; therefore, the Court concludes that the equities weigh in favor of granting PJI in this case.

Therefore, the Court awards the City PJI for its project costs, third-party consulting costs, and labor costs discussed above.

### III.  CONCLUSION

Consistent with the foregoing analysis, the Court ORDERS as follows:

(1) Defendants' Motion for Judgment Under Rule 52(c), ECF No. 314, is DENIED;

(2) The Clerk of Court is directed to enter final judgment in favor of the City in the following amounts, as well as post-judgment interest at the rate set by 28 U.S.C. § 1961:

    a. $8,756,659 in project costs;

    b. $456,024 in third-party consulting costs;

    c. $4,376,969 in labor costs; and

(3) Within 10 days of this Order, the City shall file a supplement to Mr. Seigneur's pre-judgment interest calculations in ECF No. 315-2, setting forth the amounts of pre-judgment interest due on the City's project costs, third-party consulting costs, and labor costs from April 15, 2023, through the date of final judgment. The Court will enter a separate Order awarding these pre-judgment interest amounts accordingly.

DATED this 21st day of March 2024.

BY THE COURT:

Charlotte N. Sweeney
United States District Judge