## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-02063-CNS-SBP

CITY OF FORT COLLINS, a Colorado home rule municipality,

      Plaintiff and Counterclaim Defendant,

v.

OPEN INTERNATIONAL, LLC,

      Defendant and Counterclaimant,

and

OPEN INVESTMENTS, LLC,

      Defendant.

---

## ORDER ON MOTION TO COMPEL (ECF No. 374) AND
## MOTION FOR PROTECTIVE ORDER AND SANCTIONS (ECF No. 388)

---

**Susan Prose, United States Magistrate Judge**

      This matter is before the court on plaintiff and counterclaim defendant City of Fort Collins's ("the City") Motion to Compel, ECF No. 374 ("Motion to Compel"), and defendant and counterclaim plaintiff Open International, LLC's ("Open International") Motion for Protective Order and Sanctions, ECF No. 388 ("Motion for Protective Order"). Both Motions have been referred to the undersigned United States magistrate judge pursuant to 28 U.S.C. § 636(b)(1). Memoranda of Referral, ECF Nos. 375, 389. The court heard arguments on the Motions on April 11 and April 16, 2025. Courtroom Minutes, ECF Nos. 417, 420. Having carefully considered all information submitted by the parties and the applicable law, the court

now respectfully **GRANTS in part** the Motion to Compel, authorizing additional discovery consistent with this Order, and **DENIES** the Motion for Protective Order.

## I.    Motion to Compel

Defendants Open International and Open Investments, LLC ("Open Investments") (collectively, "Defendants"), removed this case from state court. ECF No. 1. A jury found in the City's favor on liability. ECF No. 295. Judge Sweeney then held a hearing to calculate damages. ECF No. 298.

On March 28, 2024, the Clerk's office entered an amended final judgment against Defendants in a principal amount of almost $20 million, with post-judgment interest accruing at a rate of 5.02 percent per annum. ECF No. 332; *see also* ECF No. 366. After further post-judgment motion practice, Defendants ultimately filed an amended notice of appeal. ECF No. 371. Their appeal to the United States Court of Appeals for the Tenth Circuit remains pending. In the meantime, Open *Investments* posted a letter of credit as security to stay execution of the judgment pending appeal. With that security in place, Judge Sweeney granted the stay of execution on the conditions stated in her order of May 17, 2024. ECF No. 356. Open *International*, however, did not file a motion to stay execution of the judgment.

### A.    Connections Between Open International and the Open Entities

After final judgment entered, the City propounded written discovery on Open International pursuant to Federal Rule of Civil Procedure 69(a)(2), which provides that, "[i]n aid of the judgment or execution, the judgment creditor . . . may obtain discovery from any person— including the judgment debtor—as provided in these rules[.]" Open International responded. *See* Responses to First Set of Post-Judgment Discovery Requests, ECF No. 374-7; *see also*

Supplemental Responses, ECF No. 374-9. The impetus for the instant Motion to Compel is the

City's assertion that Open International's discovery responses are inadequate in significant

respects. The City argues that Open International should be compelled to produce documents that

fall into three categories:

> (1) contracts between Open International and a group of entities which this court
> will refer to as the "Open Entities," *see* Motion to Compel at 8[1];
>
> (2) contracts between Open International and clients identified on its website, *id.*
> at 9-11; and
>
> (3) documents related to the use of the trade name "Open Intelligence," a purported
> "rebrand" of Open International. *Id.* at 12-15.

As for contracts between Open International and any other Open Entity, or between Open

International and any client identified on the Open International website, Open International

produced only two contracts: its contract with the City and its contract with the Tualatin Valley

Water District in Oregon. *Id.* at 8. Open International asserts that it has no other contracts with

any other Open Entity and that its only two clients are the City and Tualatin, and it further

contends that it has no documents related to the use of the trade name "Open Intelligence."

Response at 5-7, 15-16. According to Open International, any documents other than those it has

produced are outside its possession, custody, or control; are not within the scope of post-

judgment discovery authorized under Rule 69; and are not responsive to the City's discovery

---

[1] In its response to the Motion to Compel, Open International states that the following companies
"have used an 'Open' trade name": Open International CIA LTDA (renamed Open Intelligence
CIA LTDA in 2024), Open International Systems Corp., Open Investments, LLC, and Open
Systems Colombia S.A.S. (renamed Open International SAS in 2020 and Open Intelligence SAS
in 2024). Response in Opposition to Plaintiff's Motion to Compel, ECF No. 378 ("Response")
at 2-3.

requests in any event. *Id.* at 7. Further, Open International avers that it "operates exclusively as an American distributor of [its] Colombian affiliate's software and supervisors," and without "access to the confidential agreements between other Open companies and their foreign customers"; that it "does not have the authority to direct other Open companies to turn over their documents"; that it "does not have access to, or the authority to access, any computer servers owned and maintained by any other Open company, nor the authority to require employees of any other Open company to otherwise participate in United States discovery directed at other companies"; and that it "is not apt to request and obtain documents from any other Open Entity in the normal course of business of Open International LLC." *Id.* at 7-8 (citing ECF No. 378-1) (Declaration of William Corredor). Counsel for Open International stood by these representations during the recent discovery conferences in this court.

However, in resolving the Motion to Compel, the court also must consider the significant information indicating that the lines of demarcation between Open International and Open Investments—and between Open International and the other Open Entities—are not so clear as Open International suggests. As the City emphasizes, until quite recently, Open International's website affirmatively declared that Open *International* had "Key Customers" in "19 countries" with "40M Bills Per Month," "4.6M on the Cloud," and "+100 successful implementations" of its "Open Smartflex Holistic CIS." Motion to Compel at 1 (undated screenshot); *see also* ECF No. 374-2 (Executive Brochure for Open International (download from Open International website describing "Open *International's* Innovative, Agile, & Flexible Customer Platform for Forward Thinking Utility Services Providers") (emphasis added). Open International's website,

according to the City, has since "been retroactively scrubbed of references to 'Open

International.'" Motion to Compel at 2.[2]

In addition to this confusing conflation of the various iterations of "Open," other

information in the record evinces the interconnectedness of Open International and the other

Open Entities. As a baseline matter, it is undisputed that each of the Open Entities is in the same

business—providing utility-billing software—as Open International. And Open International

admits that it serves "as a **distributor** for the United States market of Open Investments, LLC's

and Open Investments, LLC's **foreign affiliates' software and services**," Response at 3

(emphasis added). Linkage between Open International and the Open Entities is further strongly

suggested by the fact that these various organizations have held themselves out to the public

using the same trade name and the same website. While Open International argues that "Open"

and "Open International," as used on the website, "*do not refer to Open International LLC

specifically*," and asserts that "the Open International trade name was in use decades before

[Open International] was even created," *id.* (emphasis in original), the longstanding use of nearly

identical variants of the name "Open International" is reason to allow further inquiry into the

relationship among Open International and the various Open Entities.

Bolstering this conclusion is the fact that, when Open International responded to the

Motion to Compel on November 29, 2024, a person named William Corredor identified himself

as the chief executive officer of Open International. ECF No. 378-2 ¶¶ 1. But Mr. Corredor is

---

[2] The court observes, consistent with the City's representation, that an internet search for "Open
International" leads to https://www.openintl.com (last visited April 22, 2025). That website opens
to a main page which describes "Open" without reference to the word "International." It is
unclear from the record when, exactly, the term "International" was removed from the website.

also the "principal"—a term he does not specifically define or explain—of most (if not all) of the

other Open Entities, including Open International Systems Corp., Open Intelligence SAS, and

Open Intelligence CIA LTDA. *Id.* ¶¶ 4-5.

To be sure, Mr. Corredor declares that the other Open Entities are "separate and distinct

from Open International LLC," *id.* ¶ 5, and he asserts that "[t]hese other companies have always

maintained a separate corporate form, with distinct governing documents, and have never

mingled their business with that of Open International LLC." *Id.* But the totality of the record

before this court indicates that these declared lines are, at a minimum, fluid, as exhibited by Mr.

Corredor's own role in the variously-named Open organizations and his apparent ability to

transition freely among them. Indeed, in just the past few months, Mr. Corredor evidently

surrendered his position of CEO of Open International—although he admits that he is still a

"beneficiary" of that entity and that it is "sort of" correct that he has "controlling interests in both

Open International and Open Investments"—the latter of which is the majority owner of Open

International. March 18, 2025 Hearing Transcript, ECF No. 412 at 27:17-20, 30:14-31:13. As

Judge Sweeney noted at the recent motions hearing, Open International and Open Investments

opted not to separate themselves at trial, making the "[s]trategic decision to argue this case to the

jury *as one and the same entity*." *Id.* at 9:9-12 (emphasis added). Put simply, this record suggests

that Open International may not be as entirely distinct from the other Open Entities as Open

International would have it.

### B.    Authorization of Post-Judgment Depositions of Corredor and Parrott

Based on this record, the court finds that it is appropriate to exercise its discretion to

authorize two depositions in connection with post-judgment discovery: one of Mr. Corredor and

the second of Hernando Parrott, an individual who, at least as of March 18, 2025, is said to

"run[] Open International." ECF No. 412 at 28:9-10; Affidavit of Hernando Parrott, ECF

No. 400-1 ¶ 2 (stating that Parrott has served as the president of Open International since August

2015); *see also, e.g.*, *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1189 (10th Cir. 2009)

(recognizing that a district court "has discretion in determining what the scope of discovery

should be," and that "[t]he court may permit broader discovery in a particular case depending on

the circumstances of the case, the nature of the claims and defenses, and the scope of the

discovery requested"); *Georgacarakos v. Wiley*, No. 07-cv-01712-MSK-MEH, 2011 WL

940803, at *5 (D. Colo. Mar. 16, 2011) ("The Magistrate Judge has broad discretion to resolve

discovery disputes and is always guided by Fed.R.Civ.P. 1's instruction that determinations

promote the 'just, speedy, and inexpensive' resolution of the issues.") (cleaned up, citing *Pflum

v. U.S.*, 212 F.R.D. 580, 582 (D. Kan. 2003)).

 In a deposition of Mr. Corredor—who is a "principal" and the immediate past CEO of

Open International and is also a principal of the other Open Entities, *id.* ¶ 5—the City can

explore the bases for Mr. Corredor's assertion that the Open Entities "are separate and distinct

from Open International LLC." ECF No. 378-2 ¶ 5. While not purporting to define the precise

contours of such a deposition, the court envisages that it would seek to elicit factual support for

Mr. Corredor's contention that Open International and the other Open Entities maintain "a

separate corporate form," *see id.*, and that the City's questions might include (but not be limited

to) inquiries about the "Structure and Authority" of these entities, *see id.* at p. 2, the histories of

the various Entities, the Entities' relationships with Open International, the initiating and

governing documents of the Entities, and the identities of the members or board members of each

7

Entity. Similar questions might reasonably be asked of Mr. Parrott, the President of Open International.

The court finds that depositions of these officials easily fall within the broad discovery parameters of Rule 69. *Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134, 138 (2014) (recognizing that "[t]he rules governing discovery in postjudgment execution proceedings are quite permissive"). Rule 69(a)(2) permits a judgment creditor to "obtain discovery from any person—including the judgment debtor—as provided in these rules," and as the commentary on Rule 69 clarifies, "all discovery procedures provided in the [Federal Rules of Civil Procedure] are available[.]" Fed. R. Civ. P. 69(a)(2) advisory committee notes to 1970 amendment; *see also Caisson Corp. v. Cnty. W. Bldg. Corp.*, 62 F.R.D. 331, 334 (E.D. Pa. 1974) (recognizing that "all the discovery devices of the Rules may be used as in the progress of the action" to facilitate the discovery of "hidden or concealed assets of the judgment debtor"). "So long as the discovery is in aid of execution of a judgment, the majority of the case law requires only that the information sought be relevant." *Stan Lee Media, Inc. v. Walt Disney Co.*, No. 12-cv-02663-WJM-KMT, 2015 WL 5210655, at *2 (D. Colo. Sept. 8, 2015). The relevance standard for post-judgment discovery mirrors the expansive standard governing pretrial discovery and incorporates the principal "that 'relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence'; relevant information pursuant to Rule 69(a)(2) must be such that it could *possibly* 'lead to executable assets.'" *Id.* (quoting *Republic of Argentina*, 573 U.S. at 144) (cleaned up, emphasis added)).

It is apparent from the record here that discovery designed to suss out the complex web of relationships among Open International and the various Open Entities "could possibly lead to

executable assets" by establishing that these entities are in fact alter egos of each other—a legal

question on which the court need not opine in deciding the Motion to Compel. And to the extent

the depositions of Mr. Corredor and Mr. Parrott may involve questioning concerning the third-

party Open Entities, such questions would not run afoul of Rule 69.

While third parties ordinarily "'can be examined only about the assets of the judgment

debtor and cannot be required to disclose their own, probing questioning is allowed with regard

to third parties with close ties to the judgment debtor.'" *Reg'l Dist. Council by & through Parker*

*v. Mile High Rodbusters, Inc.*, No. 13-cv-00214-REB-KLM, 2019 WL 1856743, at *2 (D. Colo.

Apr. 24, 2019) (quoting 12 Charles Alan Wright, Arthur R. Miller, et al., Federal Practice &

Procedure § 3014 (3d ed. 2019) (cleaned up)). Such probing is allowed upon "a somewhat

heightened showing of necessity and relevance—i.e., at least some demonstration of concealed

or fraudulent transfers or alter ego relationship with the judgment debtor." *Id.* (quoting *Mountain*

*Dudes, LLC v. Split Rock, Inc.*, No 2:08-cv-00940, 2013 WL 5435707, at *2 (D. Utah Sept. 29,

2013) (cleaned up)). The judgment creditor is not obliged to first prove alter ego or fraud, but

need only come forward with "evidence sufficient to raise legitimate questions about the

relationship between the judgment debtor and the [third party], and consequently, transactions

between the two." *Id.* (quoting *Mountain Dudes*, 2013 WL 5435707, at *2).

The City's judgment-collection efforts must necessarily focus on Open International's

assets, including assets held by potential alter ego entities. Here, the record contains sufficient

evidence to satisfy the "somewhat heightened" standard under Rule 69(a)(2) and to raise

"legitimate questions" about the nature of the relationship between Open International and the

other Open Entities, with the person of William Corredor himself demonstrating a "close tie"

9

between the various forms of "Open." *See id.* at *3 (permitting discovery into whether two entities were alter egos where both were in the concrete business and their principals were the same or related to each another). A probing inquiry by means of depositions of the key (if not the only) officials of Open International—including questions that may more precisely delineate Open International's relationship with third-party entities—is the key to unlocking the web of connections among the various organizations calling themselves "Open."

The court recognizes that the Motion to Compel does not request depositions but rather seeks an order for the production of contracts between the Open Entities and the Entities' customers. However, while the City has pointed to sufficient evidence to raise legitimate questions about the relationship between Open International and the other Open Entities, demonstrating that it is appropriate for the court to permit probing discovery of Open *International*, more information is needed for this court to find that Open International is obliged to produce contracts to which Open International claims not to be a party. Instead, the court finds the City must take the interim step of seeking additional evidence in support of its alter ego theory before Open International can be compelled to produce contracts which, it avers, lie outside its possession, custody, or control.[3]

In the depositions authorized in this order, the City may succeed in obtaining information from Messrs. Corredor and Parrott that will justify an order to produce contracts between the

---

[3] Nothing in this order, of course, prevents the City from utilizing other available procedures under the Federal Rules for obtaining third-party discovery, including the issuance of subpoenas. *See, e.g.*, *Kelly v. Hickman*, No. 2:17-cv-0240-APG-BNW, 2021 WL 3361701, at *1 (D. Nev. Mar. 31, 2021) (observing that "under Rule 69(a)(2) [a party] may properly invoke Rule 45 to obtain discovery").

Open Entities and their customers, but the court does not find that it has a sufficient factual basis to issue such an order now. *See, e.g.*, *XTO Energy, Inc. v. ATD, LLC*, No. CIV 14-1021 JB/SCY, 2016 WL 1730171, at *23 (D.N.M. Apr. 1, 2016) ("The party seeking production bears the burden of proving that the opposing party has the control which rule 34 requires.") (citing *Norman v. Young*, 422 F.2d 470, 472 (10th Cir. 1970)) (other citation omitted). And as for the City's doubts concerning Open International's representations that it has produced the universe of existing contracts to which Open International is a party, and that Open International has no documents related to the purported "rebrand" to "Open Intelligence," *see* Motion to Compel at 2, this court is not in a position now to order Open International to produce documents which it claims not to possess. However, the City can examine Mr. Corredor and Mr. Parrott about the alleged inadequacies in the current document production and probe whether the scope of that production encompasses all those documents actually within the possession, custody, or control of Open International.

In accordance with the foregoing analysis, the court **GRANTS in part** the Motion to Compel, authorizing post-judgment depositions of William Corredor and Hernando Parrott. In light of the City's exigent interest in identifying potential assets of Open International, the court further **ORDERS** that the depositions be completed **on or before June 25, 2025**.

## II.    Motion for Protective Order

The Motion for Protective Order seeks to prevent the City from continuing to demand discovery that Open International views as harassing and burdensome. *See* Motion for Protective Order at 1. In addition to a protective order, Open International asks the court to sanction the City, arguing that the City falsely certified that its discovery requests were not issued for any

improper purpose and were not unreasonable. *Id.* at 2. The court respectfully rejects both of these requests.

"Rule 26(c) includes among its express purposes the protection of a 'party or person from annoyance, embarrassment, oppression or undue burden or expense.'" *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 n.21 (1984). The City reasonably could view its requests as falling within the broad scope of discovery permitted under Rule 26 and Rule 69 and, indeed, this court has concluded that the City has come forward with evidence sufficient to raise "legitimate questions" about the nature of the relationship between Open International and the other Open Entities. *See Reg'l Dist. Council*, 2019 WL 1856743, at *2. No inference of a purpose to annoy, embarrass, oppress, or unduly burden may be drawn from this record, and Open International therefore has failed to demonstrate good cause for this court to enter a protective order against— much less to sanction—the City. Open International may disagree with the City's approach to post-judgment discovery, but mere disagreement does not justify the imposition of a protective order or sanctions.

Accordingly, the Motion for Protective Order is **denied**.

## CONCLUSION

For the reasons set forth above, the court respectfully **ORDERS** as follows:

1.     The Motion to Compel, ECF No. 374, is **GRANTED IN PART**, insofar as the court permits depositions of Messrs. Corredor and Parrott in aid of the City's execution of its judgment, to be completed on or before **June 25, 2025**, and

2.      The Motion for Protective Order, ECF No. 388, is **DENIED**.[4]

DATED: April 25, 2025                    BY THE COURT:

_____
Susan Prose
United States Magistrate Judge

---

[4] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 783 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, including when a "pro se litigant has not been informed of the time period for objecting and the consequences of failing to object").